UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES STILE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:14-cv-00406-JAW |
| | ) | |
| CUMBERLAND COUNTY | ) | |
| SHERIFF, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON OBJECTION TO ORDER ON MOTION FOR SANCTIONS**

The Court concludes that the Magistrate Judge's sanction of precluding the Plaintiff from asserting an emotional injury claim after a certain period is neither clearly erroneous nor contrary to law based on the Plaintiff's deplorable misconduct during his deposition.

## I.    BACKGROUND

### A.    The Genesis of the Controversy

The genesis of this controversy can be traced to a deposition of the Plaintiff that took place on December 11, 2015, at Federal Correctional Institution (FCI) Fort Dix in Fort Dix, New Jersey. The Defendants were taking Mr. Stile's deposition pursuant to a court order that allowed them to do so. *Report of Tel. Conf. and Order* at 1 (ECF No. 61) (*Tel. Conf. Report*) ("The deposition of the Plaintiff shall proceed as scheduled on December 11, 2015"). The deposition was not completed. *See Dep. Under Oral Exam. of James Stile* 62:9-63:1 (ECF No. 70) (*Stile Dep.*).

Following the aborted deposition, on December 30, 2016, the Defendants filed a motion for sanctions in which they requested that the Court dismiss Mr. Stile's Complaint with prejudice for his failure to participate in his deposition. *Mot. for Sanctions* (ECF No. 69) (*Sanctions Mot.*). On April 25, 2016, Mr. Stile objected. *Pl.'s Resp. to Def[s.'] Mot. for Sanctions* (ECF No. 106). On June 27, 2016, the Magistrate Judge issued a recommended decision on the Defendants' motion for sanctions and, after finding that Mr. Stile's conduct was not only disrespectful but also failed to comply with the court order, the Magistrate Judge declined to dismiss his Complaint, yet raised the possibility that some other less drastic form of sanction would be appropriate. *Recommended Decision on Defs.' Mot. for Sanctions* (ECF No. 131) (*Recommended Decision*).

On July 25, 2016, both Mr. Stile and the Defendants objected to the Recommended Decision. *Pl.'s Obj. to Magistrate Judge's R. & R. as Pertains to (ECF No. 131) in the Above-Docketed Case* (ECF No. 141); *Defs.' Obj. to Magistrate's Recommended Decision on Defs.' Mot. for Sanctions, Fed. R. Civ. P. 72* (ECF No. 139). On August 23, 2016, this Court affirmed the recommended decision. *Order Affirming Recommended Decision of the Magistrate Judge* (ECF No. 155) (*Order Affirming*).

In his Recommended Decision, the Magistrate Judge left open the possibility that he would impose alternative sanctions for Mr. Stile's obstructive misconduct. *Recommended Decision* at 1, n.1, 5; *Order Affirming* at 4. On December 4, 2016, the Defendants requested a telephone conference to discuss the imposition of alternative sanctions with the Magistrate Judge. *Order on Defs.' Req. for Sanctions* at 1 (ECF

2

No. 180) (*Sanctions Order*).  The Magistrate Judge held a telephonic hearing on January 6, 2017. *Id.* On January 23, 2017, the Magistrate Judge issued the following Order:

> An appropriate sanction, therefore, is to preclude Plaintiff from recovering in this action for any emotional distress he believes he suffered following his transfer to Fort Dix.  In other words, Plaintiff will be prohibited from asserting or otherwise claiming at trial that Defendants are responsible for any emotional distress Plaintiff might have suffered after he become incarcerated at Fort Dix.

*Id.* at 5.

On February 6, 2017, Mr. Stile objected to the Magistrate Judge's Order.  *Pl.'s Obj. to Magistrate's Order (ECF No. 180) Filed in Accordance with Fed. R. Civ. P. 72* (ECF No. 181) (*Pl.'s Obj.*).  On February 16, 2017, the Defendants responded, noting that while none of the parties has been fully satisfied with the sanction issued by the Magistrate Judge, his decision falls within the Court's discretion.  *Defs.' Resp. to Pl.'s Obj. to Magistrate's Order on Def[s.'] Req. for Sanctions (Document No. 180)* (ECF No. 182).

## B.     The December 10, 2015 Stile Deposition

As earlier noted, the Defendants sought and obtained court permission to depose Mr. Stile, who was incarcerated at FCI Fort Dix in New Jersey.  *Tel. Conf. Report* at 1.   Defense counsel had traveled to Fort Dix to conduct Mr. Stile's deposition.  *Sanctions Mot.* at 3.  At the outset of the deposition, Mr. Stile read into the record a statement, a portion of which reads:

> On another note, the plaintiff does suffer from PTSD and a panic disorder which has been exacerbated by Federal Bureau of Prison's discriminatory actions against the plaintiff, as of recent, and the court

3

has been advised of such by motion for injunctive relief and/or assignment of counsel in light of the plaintiff's obvious difficulty in continuing as pro se counsel in this pending litigation.

Plaintiff will endeavor to answer the questions of this deposition today to the best of his ability, keeping in mind counsel is questioning a plaintiff who, at present, is at a mental disadvantage due to a recent episode experienced at FCI Fort Dix that can best be described as a decompensation, a meltdown due to failure of FCI Fort Dix to accommodate the plaintiff's court-ordered compliance with deadlines.

*Stile Dep.* at 10:5–24.  Later in the deposition, defense counsel questioned Mr. Stile

about the episode at FCI Fort Dix, but Mr. Stile refused to answer questions about

the Fort Dix event:

> Q.    What happened?  What everyone described it as, what were the events that took place?
> A.    I would recommend you get the files from here and explore that.
> Q.    I may not be able to do that, but I'm asking you to tell me.
> A.    I don't want to get into the particulars, because it gets me going to the point where I will get upset and we won't be able to continue with this.
> Q.    I'm sorry, Mr. Stile.  I offered you opportunities for breaks and I will reiterate that, but you have indicated that your ability to participate in this deposition is limited by this particular incident, which you've alluded to.  And so I'm going to respectfully press you to describe for me the particulars of this incident which you claim has rendered you unable to fully participate in this deposition.
> A.    Are you going to press me?
> Q.    Yes.
> A.    No, you're not, sir.
> Q.    Right.  Actually I am.
> A.    You're not going to press me.  If you want to push my buttons to the point that my PT - - don't fuck with me, dude, okay?  You're fucking with a medical condition you know nothing about.  You're not a doctor.  I haven't gotten sufficient help from these medical professionals here.  One interview with a psychologist over a culmination of eight weeks of bullshit in trying to participate in this litigation - - don't push me.  Don't, because I will terminate this.

4

Q.    Mr. Stile, if you choose to do that, I have no control over it, but I
       - -
A.    You're not here to manipulate me, sir.  I've explained to you that
       I have a medical condition.  You want to fucking manipulate that
       medical condition, do it at your own risk.
Q.    Mr. Stile - -
A.    You want to have a civil deposition here, we can do that.  You've
       been warned.

*Stile Dep.* 38:2–39:24.  This disgraceful colloquy went on for quite some time with

defense counsel asking Mr. Stile what happened at Fort Dix and Mr. Stile refusing to

answer the questions, swearing at defense counsel, and warning him not to ask

questions.  *Id.* 39:25–62:10.  Mr. Stile acknowledged that he had filed a civil action

against the Bureau of Prisons, but he refused to answer questions about whether the

events at Fort Dix caused him any emotional damages or distress.  *Id.* 57:24–60:3.

Finally, Mr. Stile stated:

> Fuck you then, dude.  You're playing with me and I'm not going to allow
> you to play with me, because it's on the record.  And this man can read
> it back, but you don't want to ask him to read it back.  You want to insist
> on fucking with me here.  You want to keep pushing my buttons.  I'm
> not going to allow it.  Pack up, fellow.  Pack up.

*Id.* at 62:11–20.  Defense counsel terminated the deposition reserving the right to

seek remedies from the court.  *Id.* 62:21–25.

Even though neither the Magistrate Judge nor this Court concluded that the

Defendants were entitled to have Mr. Stile's case dismissed because of his conduct

during the December 11, 2015 deposition, both the Magistrate Judge and this Court

condemned his conduct as "egregious," *Recommended Decision* at 5, and "deplorable."

*Order Affirming* at 2.

5

### C.    The Sanctions Order

In his sanctions order, the Magistrate Judge referred to his earlier order and reiterated that Mr. Stile's conduct during the December 11, 2015 deposition was "inappropriate and unacceptable" and "unquestionably supports the imposition of sanctions." *Sanctions Order* at 1. Turning first to the possibility that he impose a financial sanction, the Magistrate Judge rejected Mr. Stile's suggestion that any financial penalty be deducted from any final recovery Mr. Stile might obtain at trial. *Id.* at 2. The Magistrate Judge concluded that given Mr. Stile's incarceration and his limited financial resources, "a financial sanction might not be a realistic option for the Court" and would "have no real practical effect." *Id.*

The Magistrate Judge considered another sanction: prohibiting Mr. Stile from testifying at trial. *Id.* Mr. Stile objected, arguing that this sanction would effectively prevent him from presenting his case. *Id.* The Magistrate Judge agreed that to exclude Mr. Stile's trial testimony would "be tantamount to a dismissal." *Id.*

The Magistrate Judge sought a sanction that would be "meaningful" and that would "underscore[] the seriousness of Plaintiff's conduct, while permitting Plaintiff to continue with his case." *Id.* at 3. The Magistrate Judge noted that Mr. Stile refused to answer questions about an intervening event at FCI Fort Dix that had the potential to limit the scope of the damages for emotional distress that Mr. Stile could recover from the Defendants. *Id.* at 5. Accordingly, the Magistrate Judge ordered a sanction precluding Mr. Stile from claiming emotional damages following his transfer to Fort Dix. *Id.* The Magistrate Judge concluded that this sanction would relieve the

6

Defendants from having to expend resources discovering facts that should have been revealed in December 2015 and would serve to deter future inappropriate conduct by Mr. Stile. *Id.*

### D.  James Stile's Objection

In his objection, Mr. Stile concedes that "some type of sanction was appropriate." *Pl.'s Obj.* at 1.  Although Mr. Stile thought a monetary sanction might be imposed, he was "not prepared for what the Court set forth in its Order without any consideration of the Defendant[']s culpability in the termination of the deposition . . . ." *Id.* at 1.  Also, Mr. Stile argued that the Magistrate Judge did not consider his psychological condition as an explanation for his conduct during the deposition. *Id.* at 1–2.  Mr. Stile said that the Defendants estimated that the cost of attending the deposition had been between $2,500 and $5,000 and that these figures should affect the sanction. *Id.* at 2.  Mr. Stile writes that he was subjected to a "vicious beating" and that his psychological damages from the beating may persist for the rest of his life, and that he also suffered psychological damages from months of segregation. *Id.* at 2–3.  Mr. Stile urges the Court to alter the Magistrate Judge's order by stipulating that he may not receive a damages award for emotional damages in excess of $10,000, a result he believes would be "fair and just." *Id.* at 3.

## II.  DISCUSSION

### A.  The Standard of Review

Under 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), a district court reviews the decision of a magistrate judge on a non-dispositive matter

to determine whether it is "clearly erroneous or contrary to law." Here, the Magistrate Judge did not recommend dismissal of Mr. Stile's case; accordingly, this Court reviews his sanctions order based on a clearly erroneous or contrary to law standard. *Raimey v. Wright Nat'l Flood Ins. Co.*, 76 F. Supp. 3d 452, 468 (E.D.N.Y. 2014) (non-case-dispositive sanctions are reviewed under the clearly erroneous and error of law standard). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *United States v. Urban Lot St. G. 103*, 819 F.3d 1, 3 (1st Cir. 2016); *Bennett v. Kent Cnty. Mem. Hosp.*, 623 F. Supp. 2d 246, 250 (D.R.I. 2009). "A finding is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998).

### B. Contrary to Law

Mr. Stile makes no claim that the Magistrate Judge misinterpreted or misapplied the applicable law, and the Court has reviewed the Magistrate Judge's order and readily concludes that the Magistrate Judge correctly cited and applied the pertinent law. In conceding that some sanction should issue, Mr. Stile effectively conceded that his objection is to the Magistrate Judge's choice of sanction, not that he erred in applying any sanction at all. Absent any claim of legal error, the Court concludes that the Magistrate Judge's recommended sanction is not contrary to law.

8

### C.    Clearly Erroneous

The Court turns to the heart of Mr. Stile's objection: that the Magistrate Judge's choice of sanction was too onerous.  Mr. Stile first argues that Mr. Marchesi, not he, terminated the deposition.  *Pl.'s Obj.* at 1.  The Court previously addressed and rejected this claim.  *Order Affirming* at 5–6 ("The deposition . . . was never completed because Mr. Stile prevented its completion").

Mr. Stile next argues that the Magistrate Judge failed to take into account his psychological condition and how his psychological disabilities "played a part in the failure of the deposition . . . ."  *Pl.'s Obj.* at 2.  He refers to the testimony of Daniel Starbird, Ph.D., a clinical psychologist, who testified at Mr. Stile's sentencing hearing on May 29, 2015.  *See United States v. James Stile*, No. 1:11-cr-00185-JAW-1, *Tr. of Proceedings*, *Sent'g Proceedings* 80:18–98:4 (ECF No. 610) (*Test. of Daniel Hussey Starbird*).  Dr. Starbird confirmed a diagnosis of post-traumatic stress disorder and a major depressive disorder.  *Id.* 83:11–15.  Dr. Starbird also discussed Mr. Stile's drug abuse and his medical conditions.  *Id.* 83:16–25.  Dr. Starbird described Mr. Stile as "a very argumentative, contentious fellow," *id.* 87:13–14, and someone who has led a "colorful, maybe somewhat almost cantankerous life."  *Id.* 92:3–6.  But nowhere does Dr. Starbird state that Mr. Stile is unable to control himself.  Mr. Stile raised this same issue earlier, and on August 23, 2016, the Court wrote that it "has a long history with Mr. Stile and is confident that Mr. Stile is fully capable of controlling himself whenever he wishes to do so."  *Order Affirming* at 6.  The Court holds the same view now.  Mr. Stile's misconduct at the deposition was deliberate.

Thirdly, Mr. Stile urges the Court to consider the Defendants' estimate of the costs of attending the deposition, which he states ranged between $2500 and $5000. *Pl.'s Obj.* at 2. As the Court will discuss, the actual out-of-pocket cost for the defense in attending the aborted deposition is but one factor among many that the Court must consider.

Finally, Mr. Stile contends that the Court's sanction is too severe in light of his potential recovery. *Pl.'s Obj.* at 3. However, the potential severity of the sanction must be balanced against the actual severity of Mr. Stile's conduct.

The Court turns to the potential severity of the sanction. In his lawsuit against Cumberland County, Mr. Stile alleges, among other things, that the Cumberland County Jail's imposition of discipline against him combined with a physical assault by one of the corrections officers caused both physical and emotional injuries. *Compl.* (ECF No. 1). Mr. Stile also has a lawsuit pending in this Court against Somerset County for a similar set of incidents that allegedly took place while he was incarcerated at the Somerset County Jail. *See James Stile v. Somerset County*, No. 1:13-cv-00248-JAW, *Compl.* (ECF No. 1) (*Somerset Compl.*). In that Complaint, he alleges he sustained physical and emotional injuries as a result of the actions of Somerset County and its employees. *Id.* Finally, Mr. Stile has a separate lawsuit pending in the District of New Jersey against the United States Bureau of Prisons, claiming physical and psychological damages resulting from alleged violations of his rights during his period of incarceration at the FCI at Fort Dix, New Jersey. *See*

*James Stile v. United States*, No. 1:16-cv-03832-RMB-AMI, *Compl.* (ECF No. 1) (D.N.J.).

How Mr. Stile's various claims of emotional injury from three different jails interrelate is not a simple matter. If Cumberland County is liable to Mr. Stile, its responsibility for emotional damages would be limited to those damages its wrongful actions caused, not for emotional damages caused by third parties, including Somerset County and the Bureau of Prisons. At the same time, Cumberland County could be held responsible for its contribution to Mr. Stile's emotional distress as a whole. *See Lovely v. Allstate Ins. Co.*, 658 A.2d 1091 (Me. 1995). Defense counsel for Cumberland County therefore had the obligation and the right to explore Mr. Stile's claims against the Bureau of Prisons. *See Sanctions Order* at 5 ("Plaintiff, in essence, refused to testify on an issue that could possibly limit the scope of the damages Plaintiff could recover from Defendants").

Furthermore, as of December 11, 2015, the discovery deadline of December 31, 2015 was looming. On October 20, 2015, the Magistrate Judge reset the discovery deadline for December 31, 2015. *Am. Sch. Order* (ECF No. 55). By obstructing his deposition, Mr. Stile also obstructed the Defendants' ability to comply with the discovery deadline.

Fourthly, the impact of the Magistrate Judge's Order on Mr. Stile's case against Cumberland County is confined. In his Complaint against Cumberland County, Mr. Stile alleges that he was confined in the Cumberland County Jail from February 1, 2012, until January 15, 2013. *Compl.* ¶ 3. During his December 11, 2015

deposition, Mr. Stile states that he arrived at FCI Fort Dix on June 23, presumably 2015. *Stile Dep.* 23:15–17.  Therefore, under the Magistrate Judge's Order, Mr. Stile will be allowed to claim emotional damages from his time at the Cumberland County Jail until his arrival at Fort Dix, a period of roughly three years.  Nor does the Magistrate Judge's Order limit Mr. Stile from presenting evidence of his physical, as opposed to emotional, injuries.  *Sanctions Order* at 5 ("Plaintiff shall not be permitted to assert or otherwise claim at trial damages for any emotional distress he might have suffered after he become incarcerated at Fort Dix").

In addition, the Magistrate Judge properly considered the egregious nature of Mr. Stile's obstructive behavior.  This was not a mere refusal to answer questions. Mr. Stile repeatedly used the "f-word."  He implicitly threatened defense counsel. *Stile Dep.* 39:20–21 ("You want to fucking manipulate that medical condition, you do so at your own risk"), 43:4–5 ("Don't fuck with me.  Really").  He repeatedly cursed the defense lawyer.  *Id.* 43:6–8 ("Go fuck yourself, all right?"), *id.* 46:24 ("fuck you, dude"), *id.* 62:11 ("Fuck you then, dude").  He insulted and provoked defense counsel. *Id.* 50:8 ("You are deaf or dumb, fella"), *id.* 51:12 ("You are a redundant son of a bitch").  He never answered the defense lawyer's relevant questions, but his vulgarity and aggressiveness went on for pages.

Although the Magistrate Judge could have ordered an outright dismissal, *see Guex v. Allmerica Fin. Life Ins. & Annuity Co.*, 146 F.3d 40, 42 (1st Cir. 1998), he considered but rejected this more extreme sanction as too punitive.  *See Esposito v. Home Depot USA*, 590 F.3d 72, 79–80 (1st Cir. 2009) (addressing witness preclusion

when the likely result was dismissal).  He also considered and rejected as ineffective a financial sanction.  As Mr. Stile has no apparent current ability to pay a financial penalty, the effectiveness of a financial sanction would depend solely upon his success in this lawsuit, a distinct contingency.  Furthermore, if Mr. Stile is unsuccessful, there will be no penalty at all for his outrageous behavior.

In addition, one of the purposes of Rule 37 sanctions is to deter future conduct. Mr. Stile has two cases pending in this District and one in the District of New Jersey.[1] His conduct was wholly unacceptable.  If a lawyer had acted in this fashion, he or she would have been subject to a severe judicial sanction and likely bar discipline.  The Court's sanction therefore has to be severe enough to persuade Mr. Stile never again to engage in this type of deplorable conduct in this District or elsewhere.

In all, this Court concludes that the Magistrate Judge's sanction in which he precluded Mr. Stile from asserting a portion of his emotional injury claim is a temperate, measured, and justifiable response to his egregious conduct and that it falls well within his judicial discretion.

## III.   CONCLUSION

Having concluded that the Magistrate Judge's Sanctions Order was neither clearly erroneous nor contrary to law, the Court AFFIRMS the Magistrate Judge's Order on Defendants' Request for Sanctions (ECF No. 180) and OVERRULES

---

[1]      In this District, Mr. Stile has filed two other lawsuits, which were subsequently dismissed.  On May 17, 2012, he filed a lawsuit against the Cumberland County Sheriff's Office, which he dismissed voluntarily on May 30, 2012.  *Stile v. Cumberland Cnty. Sheriff's Office*, No. 2:12-cv-00163-DBH.  On August 30, 2012, he, along with other inmates, filed a lawsuit against the Cumberland County Jail, which the Court dismissed on May 6, 2013.  *Stile v. Cumberland Cnty. Jail*, 2:12-cv-00260-JAW.

Plaintiff's Objection to Magistrate's Order (ECF No. 180) Filed in Accordance with

Fed. R. Civ. P. 72 (ECF No. 181).

     SO ORDERED.

                              /s/ John A. Woodcock, Jr.
                              JOHN A. WOODCOCK, JR.
                              UNITED STATES DISTRICT JUDGE

Dated this 6th day of March, 2017