UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAMES STILE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:14-cv-00406-JAW |
| | ) |
| CUMBERLAND COUNTY | ) |
| SHERIFF, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR SUMMARY JUDGMENT

James Stile has asserted various constitutional violations and state tort claims against the Defendants. Except for one claim against three individual Defendants, Mr. Stile failed to create a genuine issue of material fact and therefore the Court denies in part and grants in part Defendants' motions for summary judgment.

## I.    PROCEDURAL HISTORY

On October 14, 2014, Mr. Stile filed a civil complaint against Cumberland County, the Cumberland County Sheriff, and twenty Cumberland County corrections officers pursuant to 42 U.S.C. § 1983, alleging that the Defendants violated his constitutional rights while he was a pretrial detainee. *Compl.* (ECF No. 1). Since then, Mr. Stile filed a number of unorthodox filings, which has complicated this case.[1]

---

[1]    A number of motions and objections to various orders extended the life of this case to nearly four years. *See Order on Def. Darling* (ECF No. 31) (*Darling Order*) (providing a procedural overview from October 2014 to April 2015); *Order Denying Mot. to Stay* (ECF No. 171) (providing a procedural overview from February 2016 to August 2016); *Order on Obj. to Order on Mot. for Sanctions* (ECF No. 181) (providing a procedural overview from December 2015 to February 2017). Given Defendants'

On September 28, 2017, Mr. Stile filed a motion to stay of proceedings as concerns motions for summary judgment in both this case and another case before this Court, 1-13-cv-00248-JAW. *Mot. to Stay Proceedings as Concerns Mots. for Summ. J.* at 1 (ECF No. 201 – 2:14-cv-00406-JAW); (ECF No. 450 – 1-13-cv-00248-JAW) (*Mot. to Stay*). On October 17, 2017, Defendants filed a response in opposition to his motion to stay. *Resp. in Opp'n to Mot. to Stay Proceedings as Concerns Mots. for Summ. J.* (ECF No. 207) (*Opp'n to Mot. to Stay*). On November 11, 2017, the Court denied Mr. Stile's motion to stay. *Order* (ECF No. 211).

On October 3, 2017, Defendants requested leave to file a memorandum of law in excess of page limit set forth in Local Rule 7(e). *Defs.' Mot. for Leave to File Mem. of Law in Excess of Page Limits* (ECF No. 202) (*Mot. for Leave.*) The Court granted Defendants' motion the same day. *Order* (ECF No. 203). On October 6, 2017, Defendants filed a motion for judgment on the pleadings and motion for summary judgment together with a statement of material facts. *Mot. for J. on Pleadings and Mot. for Summ. J.* (ECF No. 204) (*Defs.' Mots.*); *Defs.' Statement of Material Facts* (ECF No. 205) (DSMF).

Mr. Stile's responses were initially due by October 27, 2017; however, on February 15, 2018, the Magistrate Judge allowed an extension until March 23, 2018, for Mr. Stile's to file his response to Defendants' motion for judgment on the pleadings and motion for summary judgment. *Procedural Order* at 1 (ECF No. 221). On March 5, 2018, Mr. Stile moved to extend time to respond to Defendants' motions alongside

---

pending motion for judgment on the pleadings and motion for summary judgment, the Court will only focus on the procedural history relevant to these motions.

various other motions. *Mot. for Extension of Time to Resp. to Summ. J. Mot. and for Court to Issue Writ to the United States Marshals Serv./U.S. Att'y General for Transfer of Pl. to Danbury Conn. F.C.I.* (ECF No. 223). On May 29, 2018, the Magistrate Judge extended Mr. Stile's response deadline to June 15, 2018 but denied his motion in all other respects. *Order Granting Pl.'s Mots. for Order Regarding Disc., to Extend Time to File Resp. to Mot. for Summ. J., and for Transfer* (ECF No. 231).

Mr. Stile objected to the Magistrate Judge's Order on June 11, 2018, and the Defendants responded on June 22, 2018. *Pl.'s Obj. to Magistrate's Order as Concerns Pl.'s Mots. for Order Regarding Disc., to Extend Time to File Resp. to Mot. for Summ. J., and for Transfer* (ECF No. 235); *Defs.' Resp. to Pl.'s Obj. to Magistrate's Decision* (ECF No. 237). The Court overruled Mr. Stile's objection on July 13, 2018. *Order on Objection to Order on Mot. to Extend Time* (ECF No. 241). In doing so, the Court stated, "that it will immediately begin . . . reviewing the Defendants' dispositive motions . . . . If Mr. Stile is able to file a response to those motions before the Court issues the order, the Court will consider his responses and will allow the Defendants fourteen days to reply . . . ." *Id.* at 6-7.[2]

---

[2]     Subsequently, Mr. Stile filed a motion for judicial intervention and a motion to extend time for filing remaining responses and supplements. *Mot. for Judicial Intervention and Mot. to Extend Time for Filing Remaining Resps. and Supps.* (ECF No. 242). On July 17, 2018, Mr. Stile filed an affidavit with eight attachments in support of his motion for judicial intervention and a motion to extend time for filing remaining responses and supplements. *Aff.* (ECF No. 243) (*Pl.'s Aff. 1*). Defendants responded on August 1, 2018. *Resp. in Opp'n for Mot. for Judicial Intervention and Mot. to Extend Time for Filing Remaining Resps. and Supps.* (ECF No. 244). On August 27, 2018, Mr. Stile filed another affidavit with ten exhibits in support of his motion for judicial intervention and a motion to extend time for filing remaining responses and supplements. *Aff.* (ECF No. 246) (*Pl.'s Aff. 2*). The Court denied Mr. Stile's motion on September 4, 2018. *Order on Mot. for Judicial Intervention and for Extension of Time and on Mot. to Accept Partial Resps. and to Allow the R. to Remain Open, and Mot. for Ct. to obtain Bate Stamped Materials from DEF.[]S that Pl. Cited in His Resps. to Dispositive Pleadings* (ECF No. 248).

## II.   LEGAL STANDARD

### A.   Defendants' Motion for Summary Judgment[3]

A court may grant summary judgment under Federal Rule of Civil Procedure 56 if the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material when it has potential of changing a case's outcome." *Doe v. Trustees of Boston Coll.*, 892 F.3d 67, 79 (1st Cir. 2018). There is a genuine dispute "when the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Id.* (internal quotations omitted) (quoting *Rivera-Muriente v. Agosto-Alic*ea, 959 F.2d 349, 352 (1st Cir. 1992)). If the Court finds that "there is a genuine dispute of a material fact, that dispute would need to be resolved by a trier of fact." *Id.* (alteration in original) (quoting *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002)).

The Court must examine the record evidence "in the light most favorable to [the nonmovant], and [must draw] all reasonable inferences in . . . favor [of the

---

[3]    As the First Circuit has noted, "the fate of [a motion for judgment on the pleadings] will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts." *Gulf Coast Bank & Trust Co., v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004) (citing 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRACTICE AND PROCEDURE § 1367, at 509-10 (2d ed. 1995)). Here, Mr. Stile and the Defendants have disputed most of the essential facts set forth in the Complaint. Accordingly, pursuant to Federal Rule of Civil Procedure 12(d), the Court treated the motion for judgment on the pleadings as a motion for summary judgment. Fed. R. Civ. P. 12(d) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.").

    Whether technically the Court is ruling on the motion for judgment on the pleadings converted into a motion for summary judgment or on the motion for summary judgment itself is academic. To clarify the record, the Court is dismissing without prejudice the motion for judgment on the pleadings and has grounded its disposition on the pending motion for summary judgment.

nonmoving party]." *Foley v. Town of Randolf*, 598 F.3d 1, 5 (1st Cir. 2010). But a movant may "demonstrate[] an absence of evidence to support the nonmoving party's case." *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016) (internal quotations omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmovant, in turn, "must adduce specific facts showing that a trier of fact reasonably could find in his favor." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

### B.     Local Rule 56 of the District of Maine

A pro se litigant is not "absolved from compliance with the Federal Rules of Civil Procedure." *F.D.I.C. v. Anchor Props.*, 13 F.3d 27, 31 (1st Cir. 1994) (quoting *United States v. Heller*, 957 F.2d 26, 31 (1st Cir. 1992)). A pro se litigant must also comply with a district court's procedural rules." *See Ruiz Rivera v. Riley*, 209 F.3d 24, 27 –28 & n.2 (1st Cir. 2000). District of Maine Local Rule 56(c) provides, in relevant part, that a party opposing a motion for summary judgment shall submit its own statement of material facts in which it admits, denies, or qualifies the movant's statement of material facts, and section (f) states that facts shall be deemed admitted if not properly controverted. A non-movant's failure to properly respond with his or her own opposing statement of material facts deems movant's statement of material facts, if properly supported by references to the summary judgment record, as admitted. *See Lawson v. Campbell*, No. CIV. 09-226-P-H, 2010 WL 2803372, at *1 (D. Me. July 15, 2010) (citing *Cosme–Rosado v. Serrano–Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004)). However, a non-movant's failure "to respond does not automatically

entitle the movant to summary judgment." *Jackson v. Town of Waldoboro*, 751 F. Supp. 2d 263, 265 (D. Me. 2010) (citing *Torres–Rosado v. Rotger–Sabat*, 335 F.3d 1, 8-9 (1st Cir. 2003)). The movant must show that it has "met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." *Cordero-Soto v. Island Fin., Inc.*, 418 F.3d 114, 118 (1st Cir. 2005) (quoting *Lopez v. Corporación Azucarera de P.R.*, 938 F.2d 1510, 1516 (1st Cir. 1991)).

At the summary judgment stage, a verified complaint is treated as an affidavit equivalent. *Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991); *Demmons v. Tritch*, 484 F. Supp. 2d 177, 182 (D. Me. 2007). This District has generally considered prisoner affidavits even if they are noncompliant with Local Rule 56. *See e.g.*, *Clarke v. Blais*, 473 F. Supp. 2d 124 (D. Me. 2007). Mr. Stile's Complaint in this case is notarized and contains only the words "sworn to before me" above the notary's stamp. The Court considers this sufficient under the standard of a verified complaint and thus, treats it as an affidavit equivalent. Nevertheless, the Court will consider only specific facts outlined in Mr. Stile's Complaint, not conclusory allegations that do not make a factual showing that there is a genuine issue for trial. *Sheinkopf*, 927 F.2d at 1262; *Sullivan v. City of Springfield*, 561 F.3d 7, 24 (1st Cir. 2009) (citation omitted) (Courts will "ignore conclusory allegations, improbable inferences, and unsupported speculation"); *Perry v. Ryan*, No. 90–1826, 1991 U.S. App. LEXIS 7098, at *7 (1st Cir. Apr. 3, 1991) (discussing Federal Rule of Civil Procedure 56(e)).

## III. STATEMENT OF FACTS[4]

---

[4] The Court views Mr. Stile's verified Complaint in the light most favorable to his theory of the case consistent with the record. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002).

## A. The Parties

On October 30, 2015, Mr. Stile pleaded guilty to a robbery charge and was sentenced on May 29, 2015. DSMF ¶ 4.[5] Before pleading guilty, Mr. Stile was a pretrial inmate incarcerated at the Cumberland County Jail beginning February 1, 2012. *Id.* ¶ 1; *Pl.'s Compl.* ¶ 3.[6] Mr. Stile remained at the Cumberland County Jail, with the exception of a few days when he was transported to Penobscot County and Somerset County, until January 15, 2013. DSMF ¶¶ 2, 3; *Compl.* ¶ 3. The individual Defendants are all employed by Cumberland County Jail.[7] *Compl.* ¶¶ 4, 5, 8; *Answer* ¶¶ 4, 8. Defendant Joyce has the overall responsibility for the running of Cumberland County Jail and its corrections officers. *Compl.* ¶ 8; DMSF Att. 24, *Aff. of Kevin Joyce* ¶ 2.

## B. Disciplinary Hearings at Cumberland County Jail

On November 21, 2012, Corrections Officers Bryan Leblanc, Christopher

---

The Court recites certain events as facts even though the Defendants' statement of material facts conflicts with Mr. Stile's version of these events.

     Mr. Stile filed two Affidavits in this case. *Aff.* Attachs. 1-8 (ECF No. 243) (*Pl.'s Aff. I*); *Aff.* Attachs. 1-15 (ECF No. 246) (*Pl.'s Aff. II*). However, the Court has not included them for two reasons. First, Mr. Stile filed Plaintiff's Affidavit I in this case and in his suit against Somerset County,1-13-cv-00248-JAW (ECF No. 569). As regards the Cumberland County case, Mr. Stile's affidavit relates only to his repeated contention that he was unable to prepare adequate responses to the motions. There are no facts alleged in the Affidavit that relate to the merits of the pending dispositive motions.

     In the second Affidavit, Mr. Stile admits that he has not complied a response to the Defendants' motions in this case, and the remaining attachments refer to his motion for a temporary restraining order against the Federal Bureau of Prisons. *Pl.'s Aff. II* at 1-17.

[5]     *United States v. Stile*, No. 1:11-CR-00185-JAW, (ECF Nos. 543 and 579).

[6]     The parties have a slight disagreement about when Mr. Stile was first incarcerated at Cumberland County. The Defendants state that his incarceration began January 31, 2012. DMSF ¶ 1. As the Court is required to view the facts in the light most favorable to Mr. Stile, it has used the February 1, 2012, date as his first day of incarceration at Cumberland County Jail.

[7]     The parties did not identify themselves in the statements of material fact and to provide context, the Court referred to the allegations in the Complaint and contents of the Answer to provide some background information about the Mr. Stile and the Cumberland County Defendants.

Bisson and Lieutenant George Panenka[8] were part of a disciplinary board that conducted five disciplinary hearings concerning Mr. Stile. *Compl.* ¶¶ 6, 14; DSMF ¶ 5.[9] Even though he demonstrated a desire to attend the hearing, Mr. Stile was denied the right to attend.[10] *Compl.* ¶ 14.

### 1.    Cumberland County Jail's Policies for Disciplinary Hearings

The Cumberland County Sheriff's Office Corrections Division Policy and Procedure Manual contains the official policies and procedures of the Cumberland County Jail. DSMF ¶ 105.   Staff is required to review and to be knowledgeable and conversant with the policies in the manual. *Id.* Cumberland County Jail Policies and Procedures D-101 entitled "Categories of Inmate Classification Assignments," D-130 entitled "Inmate Reclassification Procedures," D-131 entitled "Appeal of Inmate Classification Assignments," D-243 "Special Management Inmates," F-200 entitled "Inmate Discipline," F-340 entitled "Library Services," and F-140 "Inmate Telephone System," are some of the official policies and procedures of the Cumberland County Jail regarding inmate services and rights in effect on the date of the incidents in this lawsuit. *Id.* ¶ 106.  Policy F-200 sets forth inmates' procedural due process rights in disciplinary hearings, which provides, among other things, for the right to:

A.  Receive written notice of the alleged violation(s) within 24 hours of

---

[8]      Given the number of Defendants and differing job titles in this case, when introducing an individual defendant, the Court provides the full name and job title, and thereafter, refers to them as Defendant(s) with their last name.

[9]      Sergeant Ralph Dubois was not present at these hearings and did not decide whether Mr. Stile was permitted to be present, whether any witnesses would be called, what evidence would be reviewed, and was not responsible for imposing any discipline on Mr. Stile.  DSMF ¶¶ 6-7.

[10]     Defendants assert that Mr. Stile was excluded from the hearings because he trashed his cell, which constituted a security threat, and refused to exit his cell.  DSMF ¶ 8.  As the Court is required to view the facts in the light most favorable to Mr. Stile, it accepts his version of these facts.

completing the report.

B. The right to a fair and impartial hearing.

C. The right to be represented by a fellow inmate and/or staff member upon request . . . .

E. The right to be present at the hearing unless waived by the accused inmate in writing, this right or his/her behavior justifies his/her absence or removal.

F. The right to enter a statement of their version of the alleged violation.

G. The right to call witnesses to the incident and other relevant witnesses and present evidence . . . .

*Id.* ¶ 111.

### 2.     First Hearing

The first hearing concerned charges against Mr. Stile based on minor violations 11, 12, and 21 and a major violation B-21. *Compl.* ¶ 16; DSMF ¶ 9. On November 15, 2012, Mr. Stile flushed newspaper and styrofoam food trays down his toilet which caused the toilet water to back up and required maintenance to unclog the toilet. DSMF ¶ 10. On the same day, corrections officer Keith Logan gave Mr. Stile notice that this incident had been referred to the Disciplinary Board along with a copy of the incident report and a copy of the Disciplinary Board Cover Sheet, which advised him of his procedural rights at the hearing. *Id.* ¶ 11. On November 16, 2012, Correctional Officer Sampson and Defendant Dubois conducted a prehearing review with Mr. Stile about the incident. *Id.* ¶ 12. Mr. Stile stated that flushing his tray was a form of protest because corrections officers had threatened to mess with his food. *Id.* Mr. Stile was advised that the disciplinary board hearing would be on November 21, 2012, and he stated that he did not plan to call any witnesses. *Id.* Ultimately, Mr. Stile was found guilty and was given seven days disciplinary

segregation as a sanction. *Id.* ¶ 13.

### 3. Second Hearing

The second hearing concerned charges against Mr. Stile based on an incident on November 15, 2012, a major violation B-21. *Id.* ¶ 14. Mr. Stile was accused of throwing his inhaler on the floor and stomping on it until it was in pieces. *Id.* On November 15, 2012, Corrections Officer Tyrone Leslie gave Mr. Stile notice that this incident had been referred to the Disciplinary Board along with a copy of the incident report and a copy of the Disciplinary Board Cover Sheet advising him of his procedural rights at the hearing. *Id.* ¶ 16. On November 18, 2012, Defendant Dubois conducted a prehearing review with Mr. Stile, which lasted about thirty minutes. *Compl.* ¶ 11; DSMF ¶ 17.[11] Mr. Stile stated that the inhalers were empty which made it difficult for him to breathe as he suffers from emphysema, and that he broke it open to illustrate that it was empty. *Compl.* ¶ 11. Mr. Stile also stated that he wanted to call as a witness a medical technician whose last name is Vattanasiu. *Id.*; DSMF ¶ 17.[12] Mr. Stile was advised that the disciplinary board hearing would be on November 21, 2012. DSMF ¶ 17. Mr. Stile was subsequently found guilty and was given fourteen days disciplinary segregation as a sanction. *Id.* ¶ 18.

### 4. Third Hearing

---

[11] The parties disagree about when this prehearing occurred. Defendants state that this prehearing was conducted on November 16, and that corrections officer Sampson was also present. DMSF ¶ 17. As the Court is required to view the facts in the light most favorable to Mr. Stile, it used November 18, 2012 as the date of the prehearing and stated that only Defendant Dubois was present.
[12] Defendants' statement of material facts conflicts with Mr. Stile's Complaint as Defendants state that Mr. Stile also wanted corrections officer Leslie as a witness. As the Court is required to view the facts in the light most favorable to Mr. Stile, it provides that Mr. Stile wanted only med tech Vattanasiu as a witness.

Mr. Stile's third hearing centered on charges based on an incident from November 16, 2012, minor rule violations 6, 11, and 20 and major violations B-11 and B-21. *Compl.* ¶ 16; *Id.* ¶ 19. These charges concerned an incident in which Mr. Stile intentionally flooded his cell. DSMF ¶ 20. That same day, Corrections Officer Suzanne DelRossi gave Mr. Stile notice that this incident had been referred to the Disciplinary Board along with a copy of the incident report and a copy of the Disciplinary Board Cover Sheet which advised him of his procedural rights at the hearing. *Id.* ¶ 21. The next day, Defendant Dubois conducted a pre-hearing review with Mr. Stile. *Id.* ¶ 22. Mr. Stile admitted that he "did it" and stated that he did not plan to call any witnesses. *Id.* He was advised that the disciplinary board hearing would be held on November 21, 2012, at which he was found guilty and was given sixteen days disciplinary segregation as a sanction. *Id.* ¶¶ 22-23.

### 5. Fourth Hearing

The fourth hearing considered charges against Mr. Stile based on an incident from November 16, 2012, minor rule violations 7, 11, 20, and 29 and major violations B-1, B-10, B-11 and B-21. *Compl.* ¶ 16; *Id.* ¶ 24. Mr. Stile was accused of repeatedly and unnecessarily calling subcontrol and ripping his styrofoam tray and stuffing it in the toilet, defecating on the floor and smearing feces in his cell, and using vulgar language toward officers. DSMF ¶ 25. On November 16, 2012, Corrections Officer Ryan Finch placed a copy of the incident report and a copy of the Disciplinary Board Cover Sheet, advising Mr. Stile of his hearing procedural rights in Mr. Stile's folder for when he returned from intake. *Id.* ¶ 26. On November 17, 2012, Defendant

Dubois conducted a prehearing review with Mr. Stile. *Id.* ¶ 27. Mr. Stile stated that he called subcontrol to get his property and for toilet paper, and that he did not plan to call any witnesses at the hearing, which he was advised would be on November 21, 2012. *Id.* Ultimately, Mr. Stile was found guilty and was given twenty days disciplinary segregation as a sanction. *Id.* ¶ 28.

### 6. Fifth Hearing

The fifth hearing concerned charges against Mr. Stile based on an incident from November 16, 2012, minor rule violations 2, 7, 11, 12, and 20 and major violations B-1 and B-21. *Compl.* ¶ 16; *Id.* ¶ 29. Mr. Stile was accused of making threats toward Corrections Officer Michael Darling, wiping feces on the walls, refusing to comply with orders, and resisting officers. DSMF ¶ 30. The same day, Defendant Darling placed a copy of the incident report along with a copy of the Disciplinary Board Cover Sheet, which outlined Mr. Stile's procedural rights at the hearing, in Mr. Stile's folder for him when he returned from intake. *Id.* ¶ 31. On November 17, 2012, Defendant Dubois conducted a prehearing review with Mr. Stile about the incident. *Id.* ¶ 32. During this review, Mr. Stile stated that he had been asking for toilet paper for a half-hour and, as a protest, he wiped feces. *Id.* He denied pulling away from the corrections officer and stated that he planned to call Corrections Officer Morrison as a witness; he was advised that the disciplinary board would be on November 21, 2012. *Id.* Mr. Stile was found guilty and was given twenty-five days disciplinary segregation as a sanction. *Id.* ¶ 33.

### 7. Aftermath of Disciplinary Hearings[13]

Mr. Stile was not present at any of the five disciplinary hearings held on November 21, 2012, and the disciplinary board made its decision based on the incident reports and did not hear from any witnesses. *Id.* ¶ 34.[14] Mr. Stile appealed the five disciplinary hearing decisions and Captain Steve Butts denied those appeals on December 3, 2012. *Id.* ¶ 35. Mr. Stile did not serve any of the disciplinary segregation that he was assessed at the five disciplinary hearings. *Id.* ¶ 36.[15] However, while incarcerated at the Cumberland County Jail, Mr. Stile received disciplinary segregation based on discipline he received while he was incarcerated at the Somerset County Jail. *Id.* ¶ 37.

### C. Somerset County Jail

### 1. Somerset County Jail's Policies

At Somerset County, an inmate may appeal the decision of a disciplinary hearing officer to the jail administrator within ten days of the disciplinary hearing, and to appeal a disciplinary hearing decision, the inmate submits an Appeal of

[13] Corrections officer Jennifer Slocum was not responsible for imposing any discipline on Mr. Stile, nor did she require Mr. Stile to serve any disciplinary segregation based on his incidents at Somerset County Jail. *Id.* ¶ 39. Similarly, Kevin Joyce, the Sheriff of Cumberland County, had no involvement in Mr. Stile's disciplinary hearings at the jail. *Id.* ¶ 47. Furthermore, Sheriff Joyce is not aware of any occasions when Cumberland County corrections officers conducted disciplinary hearings unlawfully or used unlawful procedures at disciplinary hearings. *Id.* ¶ 48. Sheriff Joyce also had no prior knowledge relating to the procedures used during the disciplinary hearings on November 21, 2012, regarding Mr. Stile. *Id.* ¶ 50. Jail administrator Fran Breton also had no prior knowledge relating to the procedures used during the disciplinary hearings on November 21, 2012, regarding Mr. Stile. *Id.* ¶ 49.

[14] Defendants cited this statement of material fact from the Affidavit of Lieutenant George Panenka, paragraph 13. However, the statement appears in paragraph 14 of that Affidavit. *Aff. of George Panenka* (ECF No. 205, Attach. 19).

[15] Defendants cited this statement of material fact from the Affidavit of Lieutenant George Panenka, paragraph 8. However, the statement appears in paragraph 15 of that Affidavit. *Aff. of George Panenka* (ECF No. 205, Attach. 19).

Disciplinary Hearing Decision form to correction officer Gary Crafts for the Jail Administrator or designee to answer. *Id.* ¶ 41. The decision of the jail administrator is final and cannot be appealed. *Id.* ¶ 42.

### 2. Previous Discipline at Somerset County Jail

Mr. Stile received a total of thirty-seven days of disciplinary segregation for various incidents committed in December 2011 while he was at Somerset County Jail. *Id.* ¶ 38. Mr. Stile served these days of segregation discipline at Cumberland County Jail beginning November 24, 2012. *Id.* Mr. Stile previously had three hearings for four separate incidents at the Somerset County Jail from December 2011 to January 2012. *Id.* ¶¶ 43-44. Mr. Stile was found guilty at all three hearings and did not appeal any of these decisions. *Id.* On September 16, 2012, Defendant Slocum contacted Somerset County Jail and, based on that request, the Somerset County Jail faxed over Mr. Stile's previous disciplinary findings while incarcerated there. *Compl.* ¶ 15.

### D. November 29, 2012 Incident

On November 29, 2012, Corrections Officer Trevor Purinton was working in maximum security when he began to let inmates out of their cells for their allotted time between 0830 and 0930 hours. DSMF ¶ 51. Mr. Stile was housed in an area with three cells around one day room and corrections officers let out inmates in the day room at the same time; however, if any inmate did not want to come out, he could

close his cell door. *Id.* ¶¶ 53-54.[16] Defendant Purinton was whispering beforehand with Mr. Lester. *Compl.* ¶ 36. Defendant Purinton called subcontrol to have them open Mr. Stile's cell door. *Id.*; DSMF ¶ 52. Mr. Stile was housed in a cell that had a sliding door and could be opened from subcontrol. DSMF ¶ 60. Defendant Purinton went to the next cell door and manually keyed open the door for inmate Lester. *Compl.* ¶ 36; *Id.* ¶ 52. Unlike Mr. Stile's cell, Mr. Lester's cell needed to be opened with a key. DSMF ¶ 61. Defendant Purinton exited the day room and walked to the next day room to begin unlocking cells there. *Id.* ¶ 55.

Before he was assaulted by Mr. Lester, Mr. Stile had not informed correctional officers that he thought Mr. Lester or other inmates would assault him. *Id.* ¶ 56. Nor had Mr. Stile told correctional officers that he felt threatened by Mr. Lester or any inmates. *Id.* ¶ 57. Mr. Stile also did not request to be placed in protective custody. *Id.* ¶ 58. Cumberland County Jail Policy D-243 outlines the procedures for protective custody. *Id.* ¶ 106A. If an inmate in maximum security requests protective custody or tells an officer he feels threatened, corrections officers will not let the inmate into the dayroom at the same time as other inmates. *Id.* ¶ 59.

Mr. Lester went into Mr. Stile's cell, got on top of Mr. Stile, and hit him with his hands. *Id.* ¶ 63. As soon as corrections officers became aware of this occurrence, they entered Mr. Stile's cell, ordered Mr. Lester to stop, and moved him away from Mr. Stile. *Id.* ¶ 64. Defendant Purinton did not request, discuss or make a deal with

---

[16] Defendants cited part of this statement of material fact as exclusively from the Affidavit of Sergeant Donald Young, paragraph 3. However, part of the statement appears in paragraph 2 of that Affidavit. *Aff. of Donald Young* (ECF No. 205, Attach. 16).

Mr. Lester to assault Mr. Stile. *Id.* ¶ 62. Medical personnel were notified and arrived shortly after, treated Mr. Stile, and escorted him to the medical department in a wheelchair. *Id.* ¶ 65. When the assault occurred, Defendant Young was the supervisor in A-pod but was not present at the time and did not witness the assault. *Id.* ¶¶ 66-67. Defendant Logan was assigned to maximum security when the assault occurred but did not witness the assault. *Id.* ¶¶ 68-69.

### E. Transition to Maximum Security

#### 1. Reclassification to Maximum Security Policy

Cumberland County Jail's Policy D-130 specifies the procedures for reclassifying an inmate to a higher classification assignment, including in emergency situations, and requires that notice of the change be given to the inmate. *Id.* ¶ 107. If an inmate is reclassified on an emergency basis, the decision will be reviewed by the Classification Committee at its next meeting. *Id.* ¶ 108. An inmate has a right to appeal a classification decision within ten days. *Id.* ¶ 109. All inmates, including those in disciplinary segregation, can make collect telephone calls regularly during assigned time periods, with some exceptions. *Id.* ¶ 110.

#### 2. Maximum Security Related Incidents

On November 6, 2012, Mr. Stile was moved from the seventy-two hour section of the jail to maximum security as a result of a threat he made in the seventy-two hour section, where he stated that if "he was out with these skinners and cop beaters, he would punch someone." *Id.* ¶¶ 70, 72.[17] Before that threat, Mr. Stile was serving

---

[17] Sergeant Donald Young did not move Mr. Stile from the seventy-two hour section of the jail to maximum security. *Id.* ¶ 73.

disciplinary segregation that began November 2, 2012, and was set to end November 9, 2012. *Id.* ¶ 71.

On November 16, 2012, Defendant DelRossi was working in maximum security, and during one of her security checks, she noticed water in the 111 dayroom coming out of cell 116. *Id.* ¶¶ 75-76. When Defendant DelRossi spoke to Mr. Stiles, he stated that he had flooded his cell. *Id.* ¶ 77. Defendant DelRossi placed Mr. Stile in cell A-224, where he had no toilet paper, running water, legal papers, hygienic items, bedding or blankets, and plumbing issues. *Compl.* ¶ 18. Mr. Stile was removed to the intake tank cell at approximately 1350 hours and brought back to maximum security at approximately 1445 hours. DSMF ¶ 78.

On November 18, 2012, Mr. Stile was reclassified as maximum security. *Compl.* ¶ 19; *Id.* ¶ 96. Lieutenant William Brady reclassified Mr. Stile on an emergency basis due to Mr. Stile's threatening officers, continually throwing things, smearing feces, and flooding his cell. DSMF ¶¶ 96, 98.[18] Mr. Stile received notice that he had been reclassified and did not appeal this decision. *Id.* ¶¶ 97, 99. Defendant Young was not involved in the decision to reclassify Mr. Stile to maximum security. *Id.* ¶ 100. On November 21, 2012, Mr. Stile's classification was reviewed, and it was decided to maintain Mr. Stile in maximum security. *Id.* ¶ 101. Mr. Stile's classification was reviewed again on December 19, 2012, and Mr. Stile's classification was maintained as maximum security. *Id.* ¶ 102. From the time he was reclassified

---

[18]     Defendant Joyce is not aware of any occasions when Cumberland County corrections officers have classified inmates unlawfully or used unlawful procedures to classify or reclassify inmates or detainees. *Id.* ¶ 104.

to maximum security until he was transferred out of Cumberland County Jail, Mr. Stile did not ask for his classification to be reviewed. *Id.* ¶ 103.

On three different dates in November and December 2012, Mr. Stile was taken to intake and returned to maximum security within a few hours. *Id.* ¶¶ 82-85, 87-89.[19] On December 6, 2012, Mr. Stile was placed in cell F-228 for six and half hours without shoes or socks by Defendants Abrol and Pickreign. *Compl.* ¶ 20. On December 7, 2012, Defendant Pickreign had all of Mr. Stile's belongings taken from his cell. *Id.* ¶ 38. Two of these transfers were done so that Mr. Stile's cell could be cleaned, one because Mr. Stile had urinated under his cell door before being moved. DSMF ¶¶ 84-85, 87-89. Inmates are occasionally moved from maximum security to intake to facilitate cell cleaning. *Id.* ¶ 86.

### F. Incidents Relating to Meals, Beverages, Privacy, and Other Jail Related Conditions

On four separate occasions in November of 2012, Mr. Stile misused his food tray. *Id.* ¶¶ 74, 79-81. In two of these incidents, Mr. Stile made derogatory remarks, one toward a corrections officer, and he also urinated on the floor. *Id.* ¶¶ 74, 80-81. On December 9, 2012, Defendant Logan threw his food tray to the floor, depriving him of that meal. *Compl.* ¶ 40.

Cells F-228 and F-229 are intake holding cells known as "the Tank." DSMF ¶ 90. In these cells, inmates have access to water in their cells but are given cups filled with juice at mealtimes. *Id.* ¶¶ 91-92. Corrections Officer Christopher Phillips often

---

[19]     Defendant Breton had no prior knowledge of Mr. Stile being placed in cells in intake at various times in November and December of 2012. *Id.* ¶ 95.

handled Mr. Stile's beverage cup in an unsanitary manner. *Compl.* ¶ 40. Mr. Stile never complained to Defendant Phillips about how he handed Mr. Stile's cup and did not request another cup from Defendant Phillips. DSMF ¶ 93.

Defendant Pickreign looked at Mr. Stile's discovery photographs in his cell. *Compl.* ¶ 25. Defendant Abrol also discussed the basis for Mr. Stile's conviction with other inmates. *Id.* ¶ 29. On November 27, 2012, Defendant Renna threw his mail in "biohazard" water, making it illegible. *Id.* ¶ 35.[20] On November 28, 2012, Defendants Renna and Purinton threw debris and urine under his cell door, and Defendant Renna threw his mail in urine on the floor. *Id.* ¶ 37.

### G. Access to Legal Materials at Cumberland County Jail

#### 1. Cumberland County Jail's Policies on Legal Materials

Pursuant to Policy F-340, inmates are not permitted to keep law books in their cells overnight. DSMF ¶ 113. Under the same policy, inmates in maximum security and seventy-two hour are provided legal books on a cart system. *Id.* ¶ 114. The cart contains a variety of basic legal materials. *Id.*[21] Materials not on the cart, including caselaw, can be requested through requests slips and similarly, to access the computer with Westlaw, a request form must be filled out. *Id.* ¶¶ 115-16.

#### 2. Access to Legal Materials

---

[20] Defendants' statement of material facts conflicts with Mr. Stile's assertion that Defendant Renna intentionally damaged his mail. DSMF ¶ 128. Defendants assert that it is possible some of the mail unintentionally fell on the floor which was wet from an overflowing toilet. *Id.* As the Court is required to view the facts in the light most favorable to Mr. Stile, it accepts his version of the facts.
[21] The cart usually has Maine statutes, US and state constitutions, Black's Law Dictionary, text on state criminal procedures, state rules of court, rules of US Circuit Court of Appeals, LaFave and Scott: Criminal Law Handbook, Cohen: Legal Research, Palmer: Constitutional Rights of Prisoners, Prisoner's Self-Help Litigation Manual, and The Detention and Correction Standards. *Id.*

Mr. Stile asserts he dismissed his previous § 1983 action (2:12-CV-260) because he did not have access to law books and the legal computer. *Compl.* ¶ 10. Corrections Officers Adam Mitchell and Stanley Piknik, and Lieutenant Arlene Jacques provided Mr. Stile with inadequate, damaged law books and did not often allow him to access the legal computer. *Id.* Corrections Officer Mark Stotts in conjunction with Defendants Purinton, Renna, Logan, Pickreign, Breton, Phillips, and Young also denied Mr. Stile access to the legal computer.[22] *Id.* Defendants Stotts, Renna, Piknik, Mitchell, Pickreign, Jacques, Purinton, Logan, Young, and Phillips, never denied Mr. Stile access to law books or legal materials unless he had engaged in disruptive behavior that created a security threat for the jail. DSMF ¶¶ 124, 127.

The legal books cart containing legal materials alternated between maximum security and seventy-two hour and was generally in maximum security for two or three days and in seventy-two hour for two or three days, and so forth. DSMF ¶ 119. Before being moved, the cart was checked to make sure all the required books were on it. *Id.* ¶ 120. Mr. Stile was found to have law books in his cell on several occasions and was written up for these violations. *Id.* ¶¶ 117-118. Mr. Stile did not request access to the Westlaw computers from April 2012 until at least November 7, 2012. *Id.* ¶ 121. Defendant Breton had no knowledge that corrections officers were not following policies with regard to Mr. Stile's access to Westlaw, legal computers, or

---

[22] Defendants' statement of material facts conflicts with Mr. Stile's assertion in that Defendants assert Defendants Stotts, Renna, Purinton, Logan, Young, Piknick, Pickreign, Phillips had no involvement in his access to the law computer and that Defendants Mitchell and Jacques never denied him access to the legal computer. DSMF ¶¶ 125-27. As the Court is required to view the facts in the light most favorable to Mr. Stile, it accepts his version of the facts.

other legal materials. *Id.* ¶ 122. Defendant Joyce is not aware of any occasions when inmates or detainees at the jail have been unlawfully denied access to legal materials. *Id.* ¶ 123.

On November 27, 2012, Defendant Stotts dumped Mr. Stile's legal mail in a puddle of toilet water.[23] *Compl.* ¶ 32. On November 30, 2012, Defendant Philips told a medical worker that Mr. Stile did not have to call his attorney and could write him instead; however, Defendant Philips did not provide Mr. Stile with writing materials. *Id.* ¶ 36.

## H.     Grievances

### 1.     Cumberland County Jail's Grievance Policies

The grievance procedure for the Cumberland County Jail provides that an inmate may initiate a grievance for an alleged violation of civil, constitutional, or statutory rights or of policy, an alleged criminal or prohibited act by a staff member, or to resolve a condition existing within the jail that creates unsafe or unsanitary living conditions. DSMF ¶ 129. If an issue is not resolved informally, the Cumberland County Jail's grievance procedure requires that an inmate first fill out an Inmate Grievance Form, which is answered by the jail administrator or designee. *Id.* ¶ 130. If an inmate is not satisfied with the response to the administration's response to the grievance, the inmate may fill out an inmate Grievance Appeal Form which is answered by the Sheriff or designee. *Id.* ¶ 131. Thereafter, if the inmate is

---

[23]     Defendants' statement of material facts conflicts with Mr. Stile's assertion that Defendant Stotts intentionally damaged his mail. DSMF ¶ 128. Defendants assert that it is possible some of the mail unintentionally fell on the floor which was wet from an overflowing toilet. *Id.* As the Court is required to view the facts in the light most favorable to Mr. Stile, it accepts his version of the facts.

not content after receiving his or her appeal response, the inmate may file a grievance with the Maine Department of Corrections for external review, which also constitutes the final step in the Cumberland County Jail grievance procedure. *Id.* ¶ 132.

## 2. Mr. Stile's Grievances

Mr. Stile filed numerous grievances at the Cumberland County Jail, covering February, April, May, June, July, August, September, October, November, and December of 2012. *Id.* ¶ 133. However, Mr. Stile did not file any grievances concerning the assault by Mr. Lester, any other inmates, or any correction officers. *Id.* ¶ 134. Mr. Stile asserts that Defendants refused to provide him with grievance forms to file and that he needed other inmates to provide him with grievance forms, which he then filed. *Compl.* ¶ 31. He also states that an unnamed corrections officer threw one of his grievances in toilet water on November 25, 2012. *Id.*

## I. Maine Tort Claims Act

Cumberland County is a named member of the Risk Pool, a public self-funded pool established pursuant to 30-A M.R.S.A. ch. 117, to provide risk management coverage for pool members, and is provided with insurance-type coverage pursuant to a document entitled "Maine County Commissioners Association Self-Funded Risk Management Pool Coverage Document" ("Coverage Document"). DSMF ¶¶ 135-36.[24] Coverage under the Risk Pool's Coverage Document extends to Cumberland County only for risk enumerated in the Coverage Document and does not extend to those risks not enumerated or for which affirmative language in the Coverage Document

---

[24] Defendants' attached a true and accurate copy of the Coverage Certificates issued to Cumberland County for January 1, 2012, through December 31, 2013 as exhibits 10 and 11. *Id.* ¶ 137.

specifically excludes coverage. *Id.* ¶ 138. Specifically, Section III-Casualty Coverage of the Coverage Document states:

> For all causes of action seeking tort damages pursuant to the provisions of the Maine Tort Claims Act, 14 M.R.S.A. § 8101, et seq. Coverage hereunder shall not be deemed a waiver of any immunities or limitations of damages available under the Maine Tort Claims Act, or any Maine statutory law, judicial precedent, or common law.

> Coverage is limited to those areas for which governmental immunity has been expressly waived by 14 M.R.S.A. § 8104-A and limited by 14 M.R.S.A. § 8104-B and 14 M.R.S.A. § 8111.

*Id.* ¶ 139. The Cumberland County Member Coverage Certificates covering the period from January 1, 2012, to December 31, 2013, states:

> Coverage is limited to those areas for which governmental immunity has been expressly waived by 14 M.R.S.A. § 8104-A, as limited by 14 M.R.S.A. § 8104-B and 14 M.R.S.A. § 8111 . . . [.]

> Liability coverage shall not be deemed a waiver of any immunities or limitation or damages available under the Maine Tort Claims Act, other Maine statutory law, judicial precedent, or common law.

*Id.* ¶ 140. Other than the insurance-type coverage provided to Cumberland County under the Risk Pool's Coverage Document, Cumberland County has not procured insurance against liability for any claim against the County or its employees for which immunity is not otherwise waived under the Maine Tort Claims Act. *Id.* ¶ 141. Cumberland County did not receive a notice of claim against the County or any County employees regarding the actions discussed in the complaint until the County received a copy of the Complaint in October of 2014. *Id.* ¶ 142.

## IV.    POSITION OF THE PARTIES

### A.    James Stile's Complaint

Mr. Stile makes multiple allegations regarding his treatment at the Cumberland County Jail; the majority centers around alleged constitutional violations committed by corrections officers. *See generally Compl.* One of Mr. Stile's major grievances concerns how his disciplinary hearings were conducted. He asserts his Fourteenth Amendment constitutional right to due process was violated when he was denied an expedient and fair disciplinary board hearing, especially when he was not present at the hearing. *Id.* ¶¶ 11, 14. Mr. Stile also claims he was slandered. *Id.* Mr. Stile avers that Defendants Joyce, Panenka, Dubois, Slocum, Young, Leblanc, Bisson, and Breton denied his First Amendment right to freedom of speech to question a witness and his Sixth Amendment right to confront witness. *Id.* ¶ 12.

Mr. Stile also complains of his access to legal materials and the treatment of his own mail. Mr. Stile claims Defendants Mitchell, Jacques, and Piknick denied him access to legal materials and that these three corrections officers along with Defendants Renna, Purington, Logan, Pickreign, Breton, Young, Stotts, and Phillips denied him access to the jail's legal computer. *Id.* ¶ 10. Mr. Stile alleges multiple incidents wherein the Defendants allegedly mishandled his mail in an unsanitary manner or took his belongings from his cell. *Id.* ¶¶ 32, 35, 37, 39.

Mr. Stile makes a variety of claims stemming from his disciplinary segregation, his placement and treatment within certain cells, and the unsanitary condition of the jail overall. He asserts that his disciplinary segregation amounted to cruel and unusual punishment and because the basis for this segregation was discipline previously adjudicated at Somerset County Jail, it amounted to a violation of his due

process rights. *Id.* ¶¶ 14, 15. Mr. Stiles also asserts his disciplinary segregation was a violation of the Double Jeopardy Clause because minor violations of jail policies were used for additional disciplinary segregation. *Id.* ¶ 16. Mr. Stile avers that Defendants DelRossi and Breton violated his due process rights by placing him the cell A-224, known as the "suicide cell," and denying him basic amenities. *Id.* ¶ 18.

Mr. Stile further asserts that A-224 did not have working bathroom facilities and this denial amounted to cruel and unusual punishment. *Id.* Mr. Stile claims he was reclassified to maximum security without a disciplinary board hearing and that this violated his due process rights. *Id.* ¶ 19. Mr. Stile alleges that in early December of 2012, Defendants Abrol and Pickreign placed him in a cell known as F-228 and stripped him of his shoes and socks for six and half hours when the cell was cold, which amounted to cruel and unusual punishment, and a violation of his due process rights and of the Double Jeopardy Clause. *Id.* ¶ 20. Mr. Stile similarly claims that his placement in intake while his cell was being cleaned constituted cruel and unusual punishment, a violation of his due process rights, and a violation of the Double Jeopardy Clause because the cell was wet and cold. *Id.* ¶ 21. From November 28 to November 29, 2012, Mr. Stile claims he was subjected to various instances of unsanitary conditions. *Id.* Mr. Stile avers that Defendant Logan once threw this food tray to the floor, and he was unable to eat, and that Defendant Phillips commonly handled garbage and then Mr. Stile's cup. *Id.* ¶ 40.

Mr. Stile asserts that corrections officers also violated his right of privacy while at Cumberland County Jail. He claims Defendant Pickreign violated his right to

privacy by allegedly going through his photographs in his cell. *Id.* ¶ 25. On November 27, 2012, Mr. Stile alleges Defendant Abrol violated his right to privacy by making a statement about Mr. Stile's robbery conviction to other inmates. *Id.* ¶ 29. Mr. Stile asserts he was also subjected to physical violence while at Cumberland County Jail. Mr. Stile claims that an assault, perpetuated against him on November 29, 2012, by another inmate, was made possible by Defendants Logan and Purinton. *Id.* ¶ 36.

## B.     Defendants' Motion for Summary Judgment

### 1.     Qualified Immunity

Defendants state they are entitled to qualified immunity on Mr. Stile's constitutional claims "because there were no constitutional violations and the rights in question were not clearly established." *Defs.' Mots.* at 8. Citing *Pearson v. Callahan*, 555 U.S. 233, 236 (2009) and *Maldonado v. Fontanes*, 568 F.3d 263, 268-69 (1st Cir. 2009), Defendants note that qualified immunity is a two-part test whereby first, the alleged facts must show that the government officials conduct violated a constitutional right, and second, the right must be clearly established. *Defs.' Mots.* at 8-9 (citing *Saucier v. Katz*, 533 U.S. 194, 2001 (2001)). They contend that Mr. Stile's procedural due process rights were not violated by any of the discipline he received at Cumberland County Jail, his placement into intake, or his reclassification to maximum security, because Mr. Stile was not punished by these actions as they were reasonably related to a legitimate governmental objective and contained several procedural safeguards. *Id.* at 9-11.

In regard to Defendants Panenka, Bisson, and Leblanc, all of whom served as

members of the disciplinary hearing board on November 21, 2012, Defendants highlight that Mr. Stile was not denied a liberty interest because he never actually served any disciplinary sanctions imposed at these hearings. *Id.* at 12-13. Defendants state that Mr. Stile's exclusion from these hearings was also not a violation of his due process rights because inmates may be excluded from disciplinary hearings for disruptive behavior without violating their due process rights. *Id.* at 13 (citing *Randle v. Woods*, 299 F. App'x 466, 469 (5th Cir. 2008)).

Defendants argue that Mr. Stile's allegation that Defendant Dubois violated his procedural due process rights is without merit because while Defendant Dubois conducted three prehearing reviews with Mr. Stile, he did not participate in any of the disciplinary hearings and did not impose any discipline on Mr. Stile. *Id.* at 13-14. Similarly, Defendants contend that Defendant Slocum's administrative involvement in having Somerset County Jail fax disciplinary information on Mr. Stile to Cumberland County Jail and providing that information to the disciplinary hearing officers does not constitute a violation of Mr. Stile's due process rights given that she neither imposed nor required Mr. Stile to serve any disciplinary segregation from Somerset County Jail. *Id.* at 14.

Defendants say Defendant DelRossi is entitled to qualified immunity because there is no preexisting law that would have put her on notice that her actions in moving Mr. Stile to intake for less than an hour would violate his due process rights. *Id.* at 15. Defendants likewise contend Defendant Young is shielded under qualified immunity because Mr. Stile did not have a liberty interest at stake in being moved

from the seventy-two hour section of the jail to maximum security, and his movement was for legitimate reasons. *Id.* at 16. As for Mr. Stile's claim that his due process rights were violated by his placement in the "drunk tank" on various dates, Defendants state that Mr. Stile did not allege which Defendants were personally involved as required under § 1983, and regardless, these placements were temporary. *Id.* at 16-17. Lastly, Defendants argue that because Mr. Stile's reclassification was done on an emergency basis, and because he was given notice and choose not to appeal, there was no due process violation. *Id.* at 17.

## 2. Failure to Exhaust Administrative Remedies

Defendants state they are entitled to summary judgment on Mr. Stile's allegations relating to the assault by Mr. Lester and Mr. Stile's reclassification to maximum security because Mr. Stile did not fully exhaust his administrative remedies as required under the Prison Litigation Reform Act. *Id.* at 31 (citing 42 U.S.C. §1997e(a)). Defendants contend that even though Mr. Stile filed numerous grievances while at Cumberland County Jail, he did not file any grievances about being assaulted by inmates or corrections officers and he did not appeal his classification to maximum security nor did he seek to have that classification reviewed. *Id.* at 31. As a result, in the Defendants' view, Mr. Stile did not properly exhaust his available administrative remedies and is precluded from making these claims.

## 3. Denial of Access to the Courts and to Effective Assistance of Counsel

Defendants contend that Mr. Stile's allegation that he was denied access to law

books by Defendants Mitchell, Jacques, and Piknick and denied access to the jail's legal computers by Defendants Renna, Purinton, Logan, Pickreign, Piknik, Young, Stotts, Phillips, Jacques, and Mitchell, and thus, denied access to the courts, falls short because Mr. Stile has not alleged an actual injury from this alleged denial. *Id.* at 4. Defendants aver that law books were available to Mr. Stile several times during the week and inmates can request other legal materials by filling out request slips. *Id.* at 18. Defendants maintain Mr. Stile did not submit any request slips to access Westlaw between April 2012 and November 7, 2012. *Id.* The only instances in which Mr. Stile was denied law books or denied access to legal materials, they assert, was when he violated jail policies or engaged in behavior that created a security threat. *Id.* at 19. As for Mr. Stile's claim of denial of effective assistance of counsel, Defendants assert it is barred by the favorable termination doctrine. *Id.* (citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).

### 4. Denial and Handling of Food

Defendants dismiss Mr. Stile's claims concerning denials of meals and the unsanitary handling of food as insufficient to constitute a cruel and unusual condition. *Id.* at 5, 18. Defendants cite *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), for the proposition that a corrections officer's actions must constitute an objectively serious deprivation and be deliberately indifferent to equate to a cruel and unusual condition. *Id.* 17-18. In turn, they argue there is no evidence that Defendants Stotts, Young, or Logan were aware that Mr. Stile was occasionally missing a meal so as to generate a substantial risk of harm to him. *Id.* at 18. As for Defendant Phillips

touching garbage and then handling cups containing juice, Defendants aver that Defendant Phillips was not actually aware that this created a substantial risk of harm and thus, there is no objectively serious deprivation or deliberate indifference in his actions. *Id.* at 18.

### 5. Violation of a Constitutional Right to Privacy

In regard to Mr. Stile's claim that his right to privacy was violated by Defendant Abrol when he made a statement to other inmates about Mr. Stile's robbery conviction and when Defendant Pickreign looked at photos from his criminal case in his cell, Defendants contend that while some courts acknowledge that prisoners do have a constitutional right to privacy, it is limited to information that is "intensely personal." *Id.* at 6 (quoting *Klein v. MHM Corr. Servs.*, 2010 U.S. Dist. LEXIS 83818, at *14 (D. Mass. Aug. 16, 2010)). Defendants assert that in contrast, Mr. Stile's alleged violations concerned matters part of the public realm, and cannot be the basis for a constitutional violation. *Id.* at 7.

### 6. Double Jeopardy

Defendants reject Mr. Stile's claim that the actions leading up to and at his disciplinary hearings constitute a violation of the Double Jeopardy Clause. *Id.* They argue that the Double Jeopardy Clause is applicable to criminal proceedings, not prison disciplinary hearings. *Id.* (citing *Langton v. Berman*, 667 F.2d 231, 232 (1st Cir. 1981); *Street v. Rakiey*, Nos. 91-1928, 92-1927, 1993 WL 93134, at *3, 1993 U. S. App. LEXIS 6655, at *8 (1st Cir. Mar. 30, 1993)).

### 7. Failure to Prevent Assault

Citing *Farmer*, 511 U.S. at 833, Defendants concede that prison personnel have a duty to protect inmates from violence by other prisoners; however, they dispute that Mr. Lester's assault on Mr. Stile is actionable because the relevant corrections officers were not deliberately indifferent. *Id.* at 19. Defendants highlight that none of the corrections officers named by Mr. Stile knew or should have known that Mr. Stile was going to be assaulted by Mr. Lester. *Id.* They argue that there is no evidence that these individuals were aware of any facts that would have lead them to infer that there was a substantial risk to Mr. Stile's safety. *Id.*

### 8. Defendant James Harriman

Defendants note that although Mr. Stile lists Corrections Officer James Harriman in the caption of his Complaint, he does not state any facts that would constitute a basis for a claim against him. *Id.* at 7. At his deposition and in his interrogatory answers, Mr. Stile alleged Defendant Harriman told another inmate, a Mr. Brushetta, that Mr. Stile was the cause of a flood in the hope that Mr. Brushetta would assault Mr. Stile. *Id.* at 20. Yet, pointing to Mr. Stile's deposition, Defendants state that Mr. Stile was not assaulted by Mr. Brushetta. *Id.*

### 9. Supervisor Liability

Defendants argue that Defendants Joyce and Breton cannot be liable under supervisory liability claims because there were no underlying constitutional violations. *Id.* at 21 (citing *Wilson v. Town of Mendon*, 294 F.3d 1, 6 (1st Cir. 2002)). Defendants assert that to be liable as a supervisor, there must be evidence of deliberate indifference. *Id.* (citing *Camilo-Robles v. Hoyes*, 151 F.3d 1, 6-7 (1st Cir.

1998)).  They contend there must also be "strong causal connection between the supervisor's conduct and the constitutional violation."  *Id.* (quoting *Ramirez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19 (1st Cir. 2014)).  Defendants claim that Mr. Stile's only allegation concerning Defendants Joyce's involvement stems from Mr. Stile's disciplinary hearings.  *Id.* at 22.  But Defendants aver that Defendant Joyce had no involvement in those hearings, and no prior knowledge relating to the procedures at these hearings.

Defendants reject Mr. Stile's claim that Defendant Breton was involved in his disciplinary hearings at Cumberland County Jail, limited his access to the law computer, or was involved in his placement to intake, as they claim Defendant Breton had no prior knowledge about the procedures of the disciplinary hearings on November 21, 2012, Mr. Stile being placed into intake, or the denial of his access to Westlaw.  *Id.* at 22-23.

### 10.    **Municipal Liability**

Similar to their argument concerning supervisory liability, Defendants contend that Cumberland County cannot be held liable under municipal liability because there were no underlying constitutional violations.  *Id.* at 23.  The Defendants maintain that none of the governmental policies, customs, or practices at issue in this suit is unconstitutional, and because there are no unconstitutional actions by Cumberland County Jail employees pursuant to unconstitutional official policies, or a pattern of extensive unconstitutional conduct which Cumberland County knew or should have known about, there can be no municipal liability.  *Id.* at

23-24.

Defendants focus on Cumberland County Jail's policies concerning disciplinary hearings, reclassification, protective custody, legal materials, and phone calls, and claim that there is no evidence that any of these policies are unconstitutional. *Id.* at 24. Defendants contend that there is no evidence of any well-settled unconstitutional practices or customs, and no showing of actual or constructive knowledge of such practices. *Id.* at 25. Defendants maintain that Defendant Joyce had no knowledge of any corrections officers unlawfully conducting disciplinary hearings or using unlawful procedures at said hearings, classifying inmates unlawfully or using unlawful procedures to classify inmates, or inmates being unlawfully denied access to legal materials. *Id.* Defendants assert that Cumberland County is not liable because to succeed on his § 1983 suit, Mr. Stile must establish a causal connection between a constitutional violation and an institutional policy. *Id.* Yet, the Defendants argue there is no evidence that they acted pursuant to a policy which resulted in a violation of Mr. Stile's constitutional rights. *Id.*

### 11. State Law Tort Claims

Defendants assert that Mr. Stile's claim of slander, as well possible other torts, are governed by the Maine Tort Claims Act ("MTCA"). *Id.* at 26. Noting that the MTCA has a 180-day notice of claim requirement, Defendants argue that Mr. Stile did not timely serve a notice of any of his claims, and that his state law tort claims are barred. *Id.* Defendants contend that Cumberland County has general immunity under the MTCA and its individual officers are all shielded under either discretionary

function or intentional act immunity. *Id.* at 27, 29. In regard to Cumberland County's general immunity, Defendants note that while there are four exceptions to immunity under the MTCA, all are narrowly construed and inapplicable to this suit. *Id.* at 27 (citing *Maynard v. Comm. of Corrections*, 681 A.2d 19 (Me. 1996); *Lynch v. Town of Kittery*, 677 A.2d 524 (Me. 1996); *J.R.M. Inc. v. City of Portland*, 669 A.2d 159 (Me. 1995)). Nor, according to the Defendants, has Cumberland County waived its immunity through being insured through Maine County Commissioners Association Self-Funded Risk Management Pool. *Id.* Defendants contend that it is immune because Mr. Stile's claim against Cumberland County is excluded from its insurance coverage, this exclusion was in place at the time of Mr. Stile's torts claims, and Cumberland County's coverage does not extend to areas in which the Cumberland County is immune under the MTCA. *Id.* at 28-29.

Defendants argue that discretionary function immunity covers Mr. Stile's claim of slander. *Id.* at 29. Defendants assert that "the management and care of prisoners is a discretionary function." *Id.* at 30 (citing *Roberts v. State*, 1999 ME, 89, ¶ 9, 731 A.2d 855 (citing *Erskine v. Comm. of Corrections*, 682 A.2d 681, 686 (Me. 1996)). In the Defendants view, Defendants Panenka, Leblanc, and Bisson used their expertise, judgment, and basic policy evaluations in conducting the disciplinary hearing, and are entitled to discretionary function immunity. *Id.* In addition, Defendants maintain that these individuals are entitled to intentional act immunity as their acts were intentional actions committed within scope of their duties, not

undertaken in bad faith. *Id.* at 30-31.[25]

## V. DISCUSSION

### A. Qualified Immunity

"[Q]ualified immunity shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Matalon v. Hynnes*, 806 F.3d 627, 632-33 (1st Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[I]t provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The qualified immunity analysis proceeds in two steps. *Alfano v. Lynch*, 847 F.3d 71, 75 (1st Cir. 2017). First, the Court must determine "whether the plaintiff's version

---

[25] Defendants note that Mr. Stile makes legal claims against unidentified defendants. *Defs.' Mot.* at 7. Mr. Stile fails to identify which Defendants his factual allegations refer to regarding various parts in his Complaint. *Compl.* ¶¶ 17, 19, 21, 22, 23, 26, 27, 31, 33, 41. Pursuant to Federal Rule of Civil Procedure 4(m), a district court may dismiss a complaint without prejudice as to a particular defendant if the plaintiff fails to serve him within 120 days after filing the complaint. Further, "a district court otherwise prepared to act on dispositive motions is not obligated to 'wait indefinitely for [the plaintiff] to take steps to identify and serve . . . unknown defendants.'" *Figueroa v. Rivera*, 147 F.3d 77, 83 (1st Cir. 1998) (quoting *Glaros v. Perse*, 628 F.2d 679, 685 (1st Cir. 1980)) (upholding dismissal of defendants after seventeen-month lapse). Mr. Stile filed his complaint nearly four years ago. Defendants moved for summary judgment nearly a year ago. Within those periods Mr. Stile has not identified those unnamed defendants. Thus, the Court dismisses those claims without prejudice. The Court also dismisses Mr. Stile's claim against Defendant Harriman for the same reason, and because Mr. Stile fails to specifically identify the cause of action against Defendant Harriman. *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) (The Court "must draw on our "judicial experience and common sense" as we make a contextual judgment about the sufficiency of the pleadings.").

In regard to Mr. Stile's claim that Defendant Pickreign witnessed an assault and refused to intervene, citing *Allen v. Wright*, 468 U.S. 737, 751 (1984), Defendants argue that Mr. Stile does not have standing to bring claims related to alleged assaults of others. The Court agrees. Standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). The record does not establish that Mr. Stile suffered an injury in fact as a consequence of Defendant Pickreign's alleged inaction, and therefore, the Court dismisses this claim without prejudice.

of the facts makes out a violation of a protected right." *Id.* Then "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (quoting *Matalon*, 806 F.3d at 633). The "clearly established" analysis consists of two sub-parts. *Id.* (citing *MacDonald v. Town of Eastham*, 745 F.3d 8, 12 (1st Cir. 2014)). First, the plaintiff must "identify either 'controlling authority' or a 'consensus of cases of persuasive authority' sufficient to send a clear signal to a reasonable officer that certain conduct falls short of the constitutional norm." *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). Then, the court determines "whether an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law." *McKenney v. Mangino*, 873 F.3d 75, 81 (1st Cir. 2017).

### 1.    Procedural Due Process Rights

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The analysis of a due process claim encompasses two issues. First, "whether there exists a liberty or property interest of which a person has been deprived," and second, "whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). In the jail context, "a pretrial detainee enjoys a due process right to be free from punishment [but] a state [also] has a valid interest in promoting the security of detention facilities for the safety of detainees and staff." *Ford v. Bender*, 768 F.3d 15, 19 (1st Cir. 2014) (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 540 (1979)). "Even when prison officials permissibly may punish a pretrial detainee for discrete violations of facility rules,

they must provide him with adequate process." *Id.* at 27. "An arbitrary, or disproportionate sanction, or one that furthers no legitimate penological objective, constitutes punishment (and, thus, is proscribed by the Fourteenth Amendment)." *Surprenant v. Rivas*, 424 F.3d 5, 13 (1st Cir. 2005); *see also Collazo-Leon v. U.S. Bureau of Prisons*, 51 F.3d 315, 318 (1st Cir. 1995).

"[T]he minimum requirements of procedural due process are satisfied by providing to prisoners advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Goguen v. Allen*, 780 F.3d 437, 450 n.45 (1st Cir. 2015) (internal quotations omitted) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974)). At the disciplinary hearing, the inmate has the right to call witnesses and present evidence, but there is no right to counsel or mandatory right to confront witnesses. *Wolff*, 418 U.S. at 566-68, 570; *Surprenant v. Rivas*, 424 F.3d at 16 (citing *id.* at 570-71) ("The *Wolff* Court also implied the obvious: that the essence of a fair hearing is an impartial decisionmaker."). The inmate must subsequently be provided written notice of the basis for the hearing findings. *Wolff*, 418 U.S. at 564.

### a.     Defendants Paneka, Bisson, and Leblanc

Defendants Paneka, Bisson, and Leblanc were part of the disciplinary hearing board which imposed discipline on Mr. Stile stemming from five separate incidents. All charges against Mr. Stile related to specific institutional violations, and although he was found guilty, no discipline was ever actually imposed for these violations and thus, cannot be considered excessive. *Collazo-Leon*, 51 F.3d at 318. Before the

November 21 hearing, Mr. Stile was provided twenty-four hour written notice of the alleged violations for all five incidents to be considered at the hearing and he had prehearing discussions with various corrections officers. The record does not establish that any of these Defendants were unfair or impartial. Because Mr. Stile was not at the November 21 hearing, the board relied on the incident reports, of which Mr. Stile had previously been apprised. Mr. Stile appealed all five board findings. Although these appeals were denied, the record shows that Mr. Stile was provided sufficient procedural due process.

However, Mr. Stile was denied attendance to the November 21 disciplinary hearing. Defendants assert that this was done because Mr. Stile had trashed his cell, was a security threat, and refused to exit his cell.[26] Mr. Stile contends flatly that Defendants Bisson, Paneka, and Leblanc refused to allow him to attend and that he had clearly demonstrated his desire to attend the disciplinary hearing. Taking the facts in the most favorable light to the non-movant and drawing all reasonable inferences to the non-movant, there is a genuine dispute of material fact and a reasonable jury could find that Mr. Stile's due process rights were violated when he was denied attendance to his own disciplinary hearing and denied the right to present his own case.[27] *Wolff*, 418 U.S. at 565-66.

---

[26]     If, as the Defendants assert, Mr. Stile refused to exit his cell to attend his scheduled hearing, Mr. Stile could well be deemed to have waived the right to be present at the hearing. However, the Court cannot reach this issue because it must view the facts in the light most favorable to Mr. Stile and Mr. Stile maintains that he wished to attend the hearing.

[27]     Defendants argue that Mr. Stile has no actionable claim because he never actually served any of the disciplinary sanctions imposed from these hearings. The Court is not persuaded by this argument because Mr. Stile was found guilty at the November 21 hearing and the crux of his procedural due process claim is that he was wrongly denied attendance from the hearing and was unable to present his own case, having no say in the board's guilty determination.

Consequently, the Court cannot conclude that Defendants Bisson, Paneka, and Leblanc are entitled to qualified immunity on this claim. The pertinent part of the qualified immunity analysis is whether denying Mr. Stile attendance at the hearing violated a clearly established right such that a reasonable defendant would understand that his actions violated that right. *Ford*, 768 F.3d at 23. In addition to the issue of waiver, one critical contested fact underpinning this issue is whether the Defendants denied Mr. Stile the right to attend for or without cause. Defendants point to *Randle*, 299 F. App'x at 469, for the proposition that an inmate may be excluded from his own disciplinary hearing without violating due process. *Id.* ("Exclusion from a disciplinary hearing *without cause* likely raises a valid due process claim . . . .") (emphasis added).

However, Mr. Stile asserts he expressed his desire to present his case to the board, but the Defendants refused to allow him to attend. This aspect of qualified immunity is often fact dependent, especially at the summary judgment stage. *See Penn v. Escorsio*, 764 F.3d 102, 113-14 (1st Cir. 2014). In drawing all reasonable inferences to Mr. Stile, a reasonable jury could find that the Defendants excluded Mr. Stile without cause. Excluding an inmate arbitrarily from his own disciplinary hearing is something a reasonable corrections officer would have known was unlawful. *Wolff*, 418 U.S. at 565-66. The Court denies the Defendants' motion for summary judgment as it pertains to Mr. Stile's violation of procedural due process claim against Defendants Bisson, Paneka, and Leblanc.

### b. Defendants Dubois and Slocum

Mr. Stile claims Defendants Dubois and Slocum also violated his procedural due process rights. Mr. Stile does not deny that Defendant Dubois conducted at least one prehearing with him, but he contends that Defendant Dubois denied him the ability to call a witness at the November 21 disciplinary hearing. However, the record shows that while Defendant Dubois conducted prehearing reviews with Mr. Stile, he did not have a role in the disciplinary board or at the actual hearing. As result, there is insufficient evidence that Defendant's Dubois's level of involvement in the November 21 disciplinary hearing constitutes an actionable due process claim. *See Howell v. O'Malley*, No. 09–11407–DJC, 2011 WL 3563159, at *4 n.7 (D. Mass. Aug. 12, 2011) (finding corrections officer's limited involvement in disciplinary hearing did not constitute an actionable claim for a constitutional violation).

Defendant Slocum is not liable for similar reasons. Mr. Stile complains that Defendant Slocum violated his due process rights by having Somerset County Jail fax over Mr. Stile's previous disciplinary findings and providing them to the disciplinary board at Cumberland County. Defendant Slocum's limited action of providing the disciplinary board findings from another jail, especially as Defendant Slocum did not serve on the disciplinary board, does not amount to an actionable due process claim. *Cf. Mutty v. Anderson*, No. CV–08–178–B–W, 2009 WL 578550, at *5 (D. Me. Mar. 4, 2009) (finding that plaintiff's deliberate indifference to medical needs claim insufficient given that defendant corrections officer had "very little involvement" with plaintiff's subsequent medical treatment).

### c.     Defendants DelRossi and Young

Mr. Stile asserts that Defendant DelRossi violated his due process rights by placing him in cell-A-224, which he states is known as the "suicide cell," without basic amenities and his legal papers. On November 16, 2012, Mr. Stile flooded his cell. Defendant DelRossi was working in maximum security at the time and moved Mr. Stile from his cell at approximately 1:50 p.m. and brought him back to his cell at 2:45 p.m. Mr. Stile was later given notice that the incident had been referred to the disciplinary board along with a copy of the incident report and a copy of the disciplinary board cover sheet, which outlined his procedural rights at the hearing. Mr. Stile's temporary relocation to another cell under these circumstances, even in the light taken most favorable to him, does not amount to a violation of his due process rights because the record does not establish that he was "punished" by this temporary relocation even assuming the subpar conditions of that cell. *See Supernant*, 424 F.3d at 13 (citing *Collazo-Leon*, 51 F.3d at 318); *Thompson v. Cumberland Cnty. Sheriff*, No. 2:13–CV–60–DBH, 2013 WL 5348088, at *3 (D. Me. Sept. 23, 2013). Nor does such a temporary denial amount to cruel or unusual punishment, especially since the record lacks any suggestion of deliberate indifference by Defendant DelRossi. *Burrell v. Hampshire* County, 307 F.3d 1, 7 (1st Cir. 2002); *Giroux v. Somerset County*, 178 F.3d 28, 31 (1st Cir. 1999).[28]

Mr. Stile asserts that Defendant Young moved him from the seventy-two-hour section of the jail to maximum security without a hearing and thereby violated his

---

[28] Mr. Stile asserts that he was kept in this cell for "days" without the urinal being flushed, which made the cell smell. However, he does not name the Defendants responsible for this condition, nor whether this condition temporally relates to when he was moved by Defendant DelRossi.

procedural due process rights. Mr. Stile was moved from the seventy-hour section to maximum security on November 6, 2012, because he made a threat. At the time of this reclassification, Mr. Stile was serving disciplinary segregation. However, Defendant Young did not transfer Mr. Stile on November 6, 2012, and had no involvement in his reclassification.[29] Thus, the record is insufficient to show that Defendant Young violated Mr. Stile's procedural due process rights.

## 2. Right of Privacy

The parameters of an inmate's right of privacy are murky. Whether the Fourteenth Amendment includes a right against the disclosure of private information is an unsettled and hotly debated question of law. *Coughlin v. Town of Arlington*, No. 10–10203–MLW, 2011 WL 6370932, at *13 (D. Mass. Dec. 19, 2011) (citing *Nat'l Aeronautics & Space Admin. v. Nelson*, 131 S. Ct. 746, 764-65 (2011) (Scalia, J., concurring)). The Supreme Court has held that prisoners have no reasonable expectation of privacy with respect to searches and seizures of their effects. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). In *Hudson*, the Supreme Court also found that pretrial detainees have a diminished expectation of privacy during their incarceration. *Id.* at 524 n.6 (citing *Bell*, 441 U.S. at 556-57).

The Court of Appeals for the First Circuit has yet to decide "whether prisoners have a constitutional right to keep medical information private." *Nunes v. Massachusetts Dept. of Correction*, 766 F.3d 136, 144 (1st Cir. 2014) (noting, however,

---

[29] Mr. Stile did not specifically allege this in his verified Complaint but raised it only during his deposition. Even in taking the facts in the light most favorable to him, Mr. Stile's allegations lack clarity to link Defendant Young to the November 6 transfer.

that prisoners inherently have diminished privacy rights); *see also Stow v. Grimaldi*, 993 F.2d 1002 (1st Cir. 1993) (upholding a prison's policy of inspecting prisoners' non-privilege outgoing mail given the prison's security concerns and the policy's minimal interference with prisoners' constitutional rights).

Mr. Stile asserts that Defendants Abrol and Pickreign violated his right to privacy: Defendant Abrol by making a statement concerning Mr. Stile's robbery conviction, and Defendant Pickreign by looking at discovery photographs in his cell. The Court is dubious of Mr. Stile's claim that a statement to other inmates concerning Mr. Stile's conviction constitutes a violation of his right to privacy as the fact of Mr. Stile's conviction is not only a matter of public record, but is also publicly accessible. Similarly, the Court is skeptical that Defendant Pickreign looking at discovery photos in his cell constitutes a violation of his right of privacy given the penological interests jails have in inspecting inmates' cells.

The Court, however, need not decide whether either incident constitutes a violation, because the Defendants are both entitled to qualified immunity. "Federal courts have discretion to bypass the first step of the qualified immunity framework and to focus instead on the second step." *Ford*, 768 F.3d at 23 (1st Cir. 2014) (citing *Maldonado*, 568 F.3d at 269-70). Here, because the contours of Mr. Stile's right to privacy, such as it may be, are not clear under these circumstances, the Court does not conclude that Mr. Stile had a clearly established right to privacy to the fact of his conviction and the discovery materials in his cell, and that an objectively reasonable official in their position would have known their actions violated that right.

*McKenney*, 873 F.3d at 8. Thus, Defendants Abrol and Pickreign are entitled to qualified immunity as to Mr. Stile's violation of privacy claim.

### B.     Exhaustion of Administrative Remedies

A prisoner must exhaust the available administrative remedies before initiating a lawsuit based on § 1983 or any other suit challenging prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted"); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("[E]xhaustion of available administrative remedies is require for any suit challenging prison conditions, not just for suits under § 1983."). Exhaustion of administrative remedies is mandatory under the Prison Litigation Reform Act. *Jones v. Bock*, 549 U.S. 199, 211 (2007). Exhaustion must be "proper," meaning "a prisoner must complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88. Still, "[a] prisoner need not exhaust remedies if they are not available. *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016). To be an available remedy, a grievance procedure must actually apply to the type of claim at issue. *Bean v. Barnhart*, No. 1:13-cv-00196-NT, 2015 WL 3935777, at *5 (D. Me. June 26, 2015) (citing *Booth v. Churner*, 532 U.S 731, 736 n.4 (2001) and *Malik v. D.C.*, 574 F.3d 781, 785 (D.C. Cir. 2009)). The Supreme Court identified three circumstances where an administrative remedy may technically be available but may not be used to obtain relief. *Ross,* 136 S. Ct. at

1859.[30]

A defendant may raise the § 1997e exhaustion requirement as an affirmative defense. *Ramos v. Patnaude*, 640 F.3d 485, 488 (1st Cir. 2011) (citing *Jones*, 549 U.S. at 212). Defendants bear the burden of proof with this affirmative defense. *Jones*, 549 U.S. at 216. To satisfy this burden, defendants must establish "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Scholefield v. Penobscot Cty. Jail*, No. 1:17-cv-00230-GZS, 2018 WL 3626113, at *3 (D. Me. July 30, 2018) (quoting *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir.)), *report and recommendation adopted*, 2018 WL 4214141 (D. Me. Sept. 4, 2018). If the defendants meet their burden, the plaintiff must then "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

### 1. Reclassification to maximum security

Mr. Stile argues that his due process rights were violated when he was reclassified to maximum security on November 18, 2012 without a hearing. However, Mr. Stile was reclassified on an emergency basis because he had made threats to officers, continually threw things, smeared feces, and flooded his cell. Pursuant to Policy D-130(A)(2), jail personnel may immediately place an inmate in a higher

---

[30]    One is where the administrative procedure is unattainable because "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859 (citation omitted). Second, where the administrative procedure is so vague and unintelligible that it effectively becomes unusable. *See id.* Lastly, where prison officials, by misrepresentation or intimidation, for example, prevent inmates from using it. *See id.* at 1860.

security setting if that inmate poses a clear and present danger to the safety and security of the jail. Mr. Stile was given notice of this reclassification and his reclassification was reviewed two times before he left the Cumberland County Jail, and both times his classification was maintained as maximum security. Mr. Stile did not seek to review his classification once placed in maximum security.

In his Complaint, however, Mr. Stile asserts that after November 5, 2012, unnamed Defendants refused to give him grievances to file. Mr. Stile also states he was able to obtain grievances from other inmates and file them.[31] The record establishes that the jail did receive Mr. Stile's grievances for November and December of 2012, but there were no grievances pertaining to his assault by Mr. Lester, to the Defendants' failure to adequately protect him, or to Mr. Stile's reclassification. Reviewing Mr. Stile's verified complaint as an affidavit equivalent, because he asserts corrections officers refused to provide him with grievances after November 5, a reasonable jury could conclude that this constitutes a technically available remedy, which could not be used to obtain relief. *Ross,* 136 S. Ct. at 1860.

Mr. Stile does not identify the responsible Defendants for the alleged constitutional violation stemming from his reclassification nor does he state which Defendants refused to provide him grievances in his Complaint, however. Defendants state Lieutenant William Brady was the corrections officer responsible for reclassifying Mr. Stile. At the time of this order, as far as the Court can discern from the record, Mr. Stile has not attempted to serve Mr. Brady, although he has

---

[31]     Mr. Stile also asserts that on November 25, 2012, an unnamed corrections officer put one of his grievances in toilet water.

made multiple attempts at amending his complaint. "A district court otherwise prepared to act on dispositive motions is not obligated to wait indefinitely for [the plaintiff] to take steps to identify and . . . serve unknown defendants." *Figueroa*, 147 F.3d at 83 (internal quotations omitted) (quoting *Glaros v. Perse*, 628 F.2d 679, 685 (1st Cir. 1980)); *see also Joslin v. Hampshire Cty. House of Corrections*, No. 11-30175-KPN, 2013 WL 2247499, at *6-7 (D. Mass. Feb. 28, 2013). As a result, the Court dismisses without prejudice Mr. Stile's due process violation claim from his reclassification.

### 2. Failure to prevent assault by Mr. Lester

While at Cumberland County Jail, Mr. Stile filed various grievances, but the record does not show that he filed any grievances concerning the assault by Mr. Lester, other inmates, or corrections officers. Under the Inmate Handbook, an inmate may file a grievance stemming from an alleged violation of civil, constitutional, or statutory rights or of a policy, an alleged criminal or prohibited act by a staff member, or to resolve a condition existing within the jail that creates unsafe or unsanitary living conditions. If an inmate is not satisfied with how their grievance is handled initially, the Inmate Handbook provides for subsequent appeal procedures.

Mr. Stile's assault and his allegations that corrections officers failed to prevent it, fall under the jail's available grievance policy. Pursuant to the PLRA, Mr. Stile had to properly exhaust his available administrative remedies. The record does not establish either that Mr. Stile filed any grievances or that he appealed all his available administrative remedies concerning his assault or the corrections officers'

alleged failure to prevent it. As noted above, however, Mr. Stile asserts corrections officers refused to provide him with grievances, and in the Court's view, a reasonable jury could conclude that requiring Mr. Stile to go through other inmates to obtain these grievances because he was otherwise refused by corrections officers constitutes a technically available remedy, which could not be used to obtain relief. *Ross,* 136 S. Ct. at 1860. Thus, given that he identified specific individuals, the Court does not dismiss Mr. Stile's failure to prevent assault claim without prejudice. But as will be discussed, the Court grants Defendants' motion for summary judgment on other grounds.

## C. Denial of Legal Materials and to Effective Assistance of Counsel

The right of prisoners to reasonable, effective access to the courts is firmly established. *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980). "The right of access is a discrete, constitutional right, derived from various constitutional sources . . . ." *Simmons v. Dickhaut*, 804 F.2d 182, 183 (1st Cir. 1986) (per curiam) (citations omitted). A prisoner's right to access the courts, however, requires a showing of actual injury to that right. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). It is not enough for an inmate to "establish[] that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351. The right of access to the courts "only 'requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'" *Cookish v. Rouleau*, No. Civ. 02-526-B, 2004 WL 443208, at *4 (D.N.H. Mar. 11, 2004) (quoting *Bounds v. Smith*,

430 U.S. 817, 828 (1977)). "Even if a prison regulation, policy or practice hinders a prisoner's ability to access the courts, it may be upheld if what is challenged bears a rational relationship to legitimate penological interests." *Graham v. Cattell*, No. CV-02-377-PB, 2005 WL 67065, at *2 (D.N.H. Jan. 12, 2005) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

Mr. Stile has not shown that his denial to certain legal materials, or the treatment of certain legal mail, constituted an actual injury in violation of his constitutional right to access the courts or to effective counsel. Mr. Stile stresses that he subsequently dismissed his federal class action § 1983 suit (2:12-cv-260-JAW) because he did not have access to law books or the legal computer. In *Casey*, the Supreme Court provided that "a complaint [] dismissed for failure to satisfy a technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known, or an allegation that a prisoner was unable to bring an action to court due to the inadequacies in the law library[,]" as an example of an actual injury. 518 U.S. at 351. The record does not indicate that Mr. Stile suffered an actual injury, however. Rather, the case cited by Mr. Stile was recommended for dismissal by a Magistrate Judge of this District, and this Court affirmed the recommendation. *R & R Decision* (ECF No. 36 - 2:12-cv-00260-JAW); *Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 39 - 2:12-cv-00260-JAW).

In that case, Mr. Stile, along with another inmate, filed a § 1983 suit against the Cumberland County Jail and others on August 30, 2012. *Compl.* (ECF No. 1 -

2:12-cv-00260-JAW) (*Pl.'s previous Compl.*). On January 8, 2013, the Defendants moved to dismiss Mr. Stile's claims. *Mot. to Dismiss* (ECF No. 25 - 2:12-cv-00260-JAW). Mr. Stile filed a response in opposition to motion to dismiss on February 8, 2013, and Defendants replied on March 8, 2013. *Resp. in Opp'n to Mot. to Dismiss* (ECF No. 34 - 2:12-cv-00260-JAW); *Reply to Resp. to Mot. to Dismiss* (ECF No. 35 - 2:12-cv-00260-JAW). On March 26, 2013, a Magistrate Judge recommended dismissal of Mr. Stile's lawsuit, to which there was no objection, and the Court affirmed that recommended decision on May 6, 2013. *R & R Decision* (ECF No. 36 - 2:12-cv-00260-JAW); *Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 39 - 2:12-cv-00260-JAW).

Mr. Stile has directed the Court's attention to his previous case before this Court. The Court may take judicial notice of these prior proceedings. FED. RUL. EVID. 201(b); *E.I. Du Pont de Nemours & Co. v. Cullen*, 791 F.2d 5, 7 (1st Cir. 1986). Mr. Stile did not dismiss his previous case against Cumberland County; the Court dismissed it for failure to state a claim. As the Magistrate Judge noted in recommending dismissing his access to the courts claim, Mr. Stile "never alleges that he has suffered any personal consequence to his own ongoing litigation, has been unable to meet filing deadlines, has otherwise been unable to get his pleadings accepted by any court, or has had his right to communicate with his defense counsel compromised." *R & R Decision* at 10 (ECF No. 36 - 2:12-cv-00260-JAW). Here, the record is insufficient to show that Mr. Stile has suffered an actual injury. *See Lewis*, 518 U.S. at 360; *Boivin v. Black*, 225 F.3d 36, 42 (1st Cir. 2000). Mr. Stile's assertions

concerning his legal mail and being prevented from calling his attorney on one occasion fail for the same reasons as his claims relating to his access to legal materials because he failed to show that these alleged actions caused him an actual injury.[32] The Court grants Defendants' motion for summary judgment as to Mr. Stile's access to the courts claim.[33]

### D. Cruel and Unusual Punishment

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST. amend. VIII. It is well established that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer,* 511 U.S. at 832 (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "Pretrial detainees are protected under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment; however, the standard to be applied is the same as that used in Eighth Amendment cases." *Burrell*, 307 F.3d at 7.

"Prison officials have a duty to 'provide humane conditions of confinement [meaning,] prison officials must ensure that inmates receive adequate food . . . and must 'take reasonable measures to guarantee the safety of the inmates.'" *Giroux*, 178 F.3d at 31 (quoting *Farmer*, 511 U.S. at 832 (quoting *Hudson*, 468 U.S. at 526-27)).

---

[32]     The Defendants admit that Defendants Stotts and Renna may have accidently dropped Mr. Stile's mail on the floor when it was wet. However, Mr. Stile has failed to show this prevented him from bringing a legal claim.

[33]     Mr. Stile claims he was denied effective assistance of counsel, because on November 15, 2012, he was unable to see the private investigator hired to assist in his criminal case, *Compl.* ¶ 30. The Court concludes this is barred because it calls into question his underlying criminal conviction, which has not been nullified. *See Heck*, 512 U.S. at 486-87; *Hinds v. Pepe*, No. 15-cv-10073-LTS, 2016 WL 1643742, at *7 (D. Mass. Apr. 25, 2016).

When an inmate makes a prison-conditions type of claim in violation of the Eight Amendment, he must show "that he is incarcerated under conditions posing a substantial risk of serious harm . . . [and] [s]econd, the official involved must have had 'a sufficiently culpable state of mind.'" *Id.* at 32 (citations omitted); *see also Parlin v. Cumberland Cty.*, 659 F. Supp. 2d 201, 208 (D. Me. 2009) ("There is an objective and subjective component to the deliberate indifference inquiry."). The prison official's culpable state of mind is often referred to as "deliberate indifference," meaning the "official subjectively must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Burrell,* 307 F.3d at 8 (quoting *Farmer*, 511 U.S. at 837).

### 1. Failure to prevent assault by Mr. Lester

Corrections officers have a duty to protect prisoners from the violence of other prisoners. *Farmer*, 511 U.S. at 833 (citing *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). Defendants do not dispute this duty. However, they argue that Defendants Purinton, Logan, and Young did not act with deliberate indifference to Mr. Lester's assault of Mr. Stile. Specifically, Defendants argue that Mr. Stile provided no evidence that Defendants Purinton, Logan, and Young subjectively thought Mr. Stile was going to be assaulted or that he felt threatened by Mr. Lester.

The Court agrees. Taking the facts in the light most favorable to Mr. Stile, a reasonable factfinder could not conclude that the Defendants acted with deliberate indifference to Mr. Stile. Mr. Stile had not previously informed correctional officers

that he thought Mr. Lester or other inmates would assault him or that he felt threatened by Mr. Lester or any inmates before the assault on November 29, 2012. Nor had Mr. Stile requested to be placed in protective custody. That Defendant Purinton was seen whispering beforehand, without more, is insufficient to show that Defendants acted with deliberate indifference. There is no evidence on this record that the Defendants were aware of facts from which they could have drawn the conclusion that Mr. Stile was subject to a substantial risk of harm from Mr. Lester or other inmates. The Court grants Defendants' motion as it pertains to Mr. Stile's claim of cruel and unusual punishment in failing to prevent his assault.

### 2. Denial and handling of food

Defendants claim Mr. Stile's assertions of being denied meals and the handling of his food and beverages are limited and insufficient to survive the motion. "Cruel and unusual punishment consists of the denial of 'the minimal civilized measure of life's necessities' assessed based on the contemporary standard of decency." *Ruffin v. Hinkley*, No. 2:17-cv-00151-NT, 2017 WL 3670659, at *3 (D. Me. Aug. 25, 2017) (internal citations omitted) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), *report and recommendation adopted*, 2017 WL 4381674 (D. Me. Oct. 2, 2017). The First Circuit previously "affirmed the dismissal of an Eighth Amendment claim based on the denial of five meals, not in succession, observing that 'occasionally missing a meal is entirely consistent with the realities of modern life.'" *Id.* (internal quotations omitted) (quoting *Barnett v. Commissioner*, 187 F.3d 621, 1999 WL 529458, at *2 (1st Cir. June 17, 1999) (unpublished table opinion)).

The Court is unconvinced that Mr. Stile's claims regarding the denial and handling of some of his meals as well as Defendant Phillips' handling of his cup amount to cruel or unusual punishment or another constitutional violation. As Defendants note, Mr. Stile has not alleged he was denied multiple meals over consecutive days and has not produced evidence to that effect. Mr. Stile did not previously complain to Defendant Phillips about how he handled his cup and did not request another cup from Defendant Phillips. There is also no evidence that Defendants Logan, Young, Stotts, or Phillips were deliberately indifferent to Mr. Stile insofar as being aware of him allegedly missing meals so as to know that a substantial risk of serious harm exists. Mr. Stile has failed to supply "enough competent [genuine] evidence to enable a factfinder to decide in [his] favor [on these claims.]" *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (citation and internal quotations omitted).

### E.    Supervisor Liability

The theory of respondeat superior is inapplicable for holding government officials liable for the unconstitutional actions of their subordinates. *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Instead, supervisory officials may be held liable "if the plaintiff can establish that h[is] constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 768 (1st Cir. 2010) (citing *Rodriguez-Garcia v. Municipality of Caguas*, 495 F.3d 1, 10 (1st Cir.

2007)).  In § 1983 actions,

> [Supervisor liability] typically arises in one of two ways: either the supervisor may be a 'primary violator or direct participant in the rights-violating incident,' or liability may attach 'if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation.'

*Sanchez*, 590 F.3d at 49 (quoting *Camilo-Robles v. Zapata*, 175 F.3d 34, 44 (1st Cir. 1999)).  Either way, "the plaintiff must show that the official had actual or constructive notice of the constitutional violation.*" Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (quoting *Rodriguez-Garica*, 610 F.3d at 768).  Thus, "plaintiffs [must] show: (1) that the officials had knowledge of facts, from which (2) the officials can draw the inference (3) that a substantial risk of serious harm exists." *Ramirez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 20 (1st Cir. 2014) (citation and internal quotations omitted).

Outside deliberate indifference requirements, a plaintiff "also must show causation" for a supervisor liability claim.  *Camilo-Robles*, 151 F.3d at 7 (citing *Maldonado-Denis v. Castillo-Rodriguez,* 23 F.3d 576, 582 (1st Cir. 1994)).  "In other words, the plaintiff must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission." *Id.* at 7 (citation and internal quotations omitted).  "The showing of causation must be a strong one, as that requirement contemplates proof that the supervisor's conduct led *inexorably* to the constitutional violation." *Ramirez-Lluveras*, 759 F.3d at 19 (citation omitted) (emphasis in original).

### 1.    Defendant Joyce

Mr. Stile alleges that Defendant Joyce is liable in a supervisory capacity for the alleged constitutional violations that took place at his disciplinary hearings on November 21, 2012. Defendants counter that Defendant Joyce had no involvement in Mr. Stile's disciplinary hearings at the Cumberland County Jail and no prior knowledge of the procedures at those hearings.

Mr. Stile failed to provide sufficient evidence that Defendant Joyce had actual or constructive notice of these alleged constitutional violations, either directly or indirectly, let alone any evidence connecting Defendant Joyce in his supervisory role to the alleged violative acts of the corrections officers at the Cumberland County Jail. *See id.* at 20 (quoting *Maldonado–Denis*, 23 F.3d at 582 (providing causation could be established via proof of a "known history of widespread abuse sufficient to alert a supervisor to ongoing violations").

### 2. Defendant Breton

Defendants' argument in regard to Mr. Stile's claim of supervisor liability for Defendant Breton tracks their argument for Defendant Joyce as they contend Defendant Breton had no knowledge of the procedures being used at the November 21, 2012 hearing, and no knowledge of Mr. Stile being placed in intake or allegedly being denied computer access. The record supports the Defendants' contentions. Defendant Breton, as a Cumberland County Sheriff's Department jail administrator, lacked knowledge of any facts from which she could draw an inference that there was a substantial risk of serious harm relating to constitutional violations Mr. Stile alleges. Mr. Stile failed to supply competent and specific evidence that Defendant

Breton's supervisory "conduct led *inexorably* to [his claimed] constitutional violations." *See id.* at 19 (citation omitted) (emphasis in original). The Court grants Defendants' motion for summary judgment as it pertains to Mr. Stile's supervisor liability claims.

## F. Municipal Liability

In § 1983 suits, "municipalities can be liable for constitutional violations only if the violation occurs pursuant to an official policy or custom." That is, plaintiff must have suffered harm as a result of a constitutional violation, which the municipality is responsible for. *Monnell v. Department of Social Services,* 436 U.S. 658, 691, (1978); *see also Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 26 (1st Cir. 2005). In *Monnell*, the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. at 658. Counties are considered government entities. *See McInnis v. Maine*, 638 F.3d 18, 22 n.4 (1st Cir. 2011). "A plaintiff can establish the existence of an official policy by showing that the alleged constitutional injury was caused by a formal decision of a municipal legislative body . . . or by a person with final policymaking authority." *Welch v. Ciampa*, 542 F.3d 927, 941 (1st Cir. 2008). More exactly, a plaintiff must show (1) that the municipality adopted a policy or custom that evidenced a "deliberate indifference" to the constitutional rights of the claimant, and (2) that this policy or custom was the cause of, and moving force behind, the plaintiff's alleged constitutional injury. *See Rodriguez-Garcia*, 610 F.3d at 769 (quoting *Welch*, 542 F.3d at 941); *see also Cady v. Cumberland Cty. Jail*, No. 2:10–cv–00512–NT, 2013 WL

3967486, at *34 (D. Me. Aug. 1, 2013).

Mr. Stile's allegations mirror a typical municipal liability claim as he claims Cumberland County and Defendant Joyce failed to correct various unconstitutional actions by the corrections officers. Defendants argue that there is no evidence that any of the policies at Cumberland County Jail are unconstitutional or that Defendant Joyce, in his capacity as final decision-maker, had actual or constructive knowledge of pervasive unconstitutional practices.

The Court agrees. "Municipal liability is not vicarious." *Estate of Bennett v. Wainwright*, 548 F.3d 155 (1st Cir. 2008). Defendant Joyce denied any personal knowledge of the type of misconduct that Mr. Stile alleges. Mr. Stile has not established that any of the alleged unlawful practices were extensive or so well-entrenched that constructive knowledge may be imputed on Defendant Joyce. *See Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989) (a municipal practice "must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice"). Moreover, Mr. Stile has not identified any written policies that in themselves violated his constitutional rights. In contrast, Defendants produced written policies touching on Mr. Stile's claims, all of which the staff at Cumberland County Jail are required to review and be knowledgeable and conversant about. A review of material facts indicates compliance with these policies. In short, the summary judgment record in this case fails to establish a genuine issue of material fact as to Cumberland County's liability as a municipality, and the Court grants

Defendants' motion on this claim.

## G. State Law Tort Claims

The MTCA requires that a claimant must file against a governmental entity a written notice of claim within 180 days after the cause of action accrues. 14 M.R.S. § 8107(1). When the claim is against a political subdivision, or one of its employees, the Maine Tort Claims Act requires that the notice "shall be addressed to and filed with one of the persons upon whom a summons and complaint could be served under the Maine Rules of Civil Procedure, Rule 4, in a civil action against a political subdivision." *Id.* § 8107(3)(B). Notice is required so as to "enable the governmental entity to investigate and evaluate claims for purposes of defense or settlement." *Pepperman v. Barrett*, 661 A.2d 1124, 1126 (Me. 1995) (citing *Faucher v. City of Auburn*, 465 A.2d 1120, 1123 (Me. 1983)).

A plaintiff's notice of claim may be filed outside the 180-day requirement on the showing of "good cause;" however, the good cause exception is a narrow one. *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 19, 796 A.2d 683; *see also Porter v. Philbrick-Gates*, 2000 ME 35, ¶ 4, 745 A.2d 996 (good cause means "unable to file a claim or was meaningfully prevented from learning of the information forming the basis for his or her complaint"). A cause of action, for the purposes of the 180-day notice of claim period, begins when the plaintiff suffers a judicially cognizable injury. *Porter*, 2000 ME 25, ¶ 4, 745 A.2d 996 (citing 14 M.R.S. § 8107(1)); *Cottle Enters., Inc. v. Town of Farmington*, 1997 ME 78, ¶ 15, 693 A.2d 330). Notice of claims against an employee of a "political subdivision" must be addressed to "one of the persons upon

whom a summons and complaint could be served under the Maine Rules of Civil Procedure, Rule 4." 14 M.R.S. § 8107(3).[34]

All governmental entities are immune from suit on tort claims seeking damages unless a statutory exception is applicable. *See* 14 M.R.S. §§ 8103(1), 8104–A & 8116. Under section 8116, if "a municipality has obtained insurance for tort claims against it, the municipality is liable to the limits of the insurance coverage." "[T]he governmental entity against whom a claim is made bears the burden of establishing that it does not have insurance coverage for that claim." *Danforth v. Gottardi*, 667 A.2d 847, 848 (Me. 1995). The MTCA also provides various means in which government employees may be absolutely immune from personal civil liability. *See generally id.* § 8111(1).

Mr. Stile alleges that Defendants Joyce, Panenka, Leblanc, Bisson, and Breton slandered him by wrongfully convicting or contributing to his conviction at the November 21, 2012 disciplinary hearing. Defendants argue that Cumberland County is shielded under general immunity pursuant to the MTCA and there are no

---

[34] The notice must include:

> A. The name and address of the claimant, and the name and address of the claimant's attorney or other representative, if any;
>
> B. A concise statement of the basis of the claim, including the date, time, place and circumstances of the act, omission or occurrence complained of;
>
> C. The name and address of any governmental employee involved, if known;
>
> D. A concise statement of the nature and extent of the injury claimed to have been suffered; and
>
> E. A statement of the amount of monetary damages claimed.

14 M.R.S. § 8107(1).

applicable exceptions to waive that immunity. Defendants further assert that Mr. Stile failed to properly comply with notice of claim provisions of the MTCA. Defendants argue that the individual Defendants named are entitled discretionary immunity, or in the alternative, intentional act immunity.

The Cumberland County Jail is a governmental entity covered under the MTCA and the individual Defendants are government employees. *Parlin*, 659 F. Supp. 2d at 213. The County has not waived its immunity through its insurance policy given that its policy specifically limits coverage to only those areas for which governmental immunity is waived under the MTCA. Failure to provide proper notice under the MTCA bars the claim. *Deschenes v. City of Sanford*, 2016 ME 56, ¶ 12, 137 A.3d 198; *see also id.* ¶ 13 (quoting *Erickson v. State*, 444 A.2d 345, 349 (Me. 1982)) ("[T]he substantial compliance exception is applicable only when the 180–day requirement of § 8107(1) is satisfied.").

Mr. Stile was at the Cumberland County Jail from January 30, 2012 to January 15, 2013. The alleged slander took place on November 21, 2012. As the Court understands it, December 12, 2012 was the last date Mr. Stile is making any claims relating to his incarceration at the Cumberland County Jail. Cumberland County Jail and its employees did not receive notice of Mr. Stile's claims until October of 2014, well outside the 180-day filing period. Even if Mr. Stile suffered a judicially cognizable injury on January 15, 2013 -- his last day of incarceration at Cumberland County--Mr. Stile did not timely provide notice of his claim. Nor has Mr. Stile established good cause for why he filed outside the statutory period. The Defendants

are entitled to summary judgment on Mr. Stile's slander claim. *See Rodrigues v. Joyce*, 693 F. Supp. 1250, 1252 (D. Me. 1988).

### H. Double Jeopardy

Mr. Stile complains that his assessed days of disciplinary segregation for major violations, premised on repeated violations of minor violations, and serving discipline from another jail, constitutes a violation of Double Jeopardy. "[J]eopardy describes the risk that is traditionally associated with a criminal prosecution." *Breed v. Jones*, 421 U.S. 519, 528 (1975). Double Jeopardy protections are inapplicable to jail disciplinary hearings because there are fundamental differences between such hearings and criminal trials. *See Street*, 1993 WL 93134, at *4 (citing *Langston*, 667 F.2d at 234-35); *Trythall v. O'Mara*, No. 11-cv-458-JD, 2012 WL 1216270, at *4 n.3 (D.N.H. Mar. 29, 2012). The Court grants Defendants' motion for summary judgment as it pertains to Mr. Stile's Double Jeopardy claims.

## VI. CONCLUSION

The Court DISMISSES without prejudice, Plaintiff's claims in paragraphs 17, 19, 21, 22, 23, 24, 26, 27, 31, 33, and 41 of his Complaint (ECF No. 1).

The Court DISMISSES without prejudice, Defendants' Motion for Judgment on the Pleadings (ECF No. 204).

The Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment (ECF No. 204). The Court DENIES Defendants' Motion for summary judgment as to Mr. Stile's procedural due process violation claim against Defendants Paneka, Bisson, and Leblanc. The Court GRANTS Defendants' motion

for summary judgment in all other respects.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of September, 2018